COMMONWEALTH *vs.* ALBERT A. DAIGLE.

Hampden. October 5, 1979. — January 18, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Practice, Criminal,* Assistance of counsel, Fair trial, Disclosure of evidence, Suppression of evidence by prosecutor, Argument by prosecutor. *Constitutional Law,* Assistance of counsel.

At a criminal trial, the defense counsel's failure to produce certified copies of the criminal records of two prosecution witnesses did not amount to ineffective assistance of counsel where the witnesses' own admissions and repeated references to their criminal records sufficiently informed the jury of their backgrounds. [543-545]

At a criminal trial, the defense counsel's failure to procure and introduce pending indictments against two prosecution witnesses in order to bolster his theory that they were testifying in exchange for favorable treatment did not amount to ineffective assistance of counsel where the inference was adequately raised and further attack along that line could have prejudiced the defendant's claim. [545-546]

At a robbery trial, a witness's false testimony that he had pleaded guilty to an indictment arising out of his participation in the same robbery did not require reversal of the defendant's conviction where neither the witness nor the prosecutor knew that the testimony was false and where the false testimony did not have a substantial probability of altering the result of the trial. [546-548]

Where the defense counsel at a criminal trial was aware that two prosecution witnesses had prior criminal records but made no attempt to obtain them, there was no showing that the Commonwealth improperly withheld exculpatory evidence by its failure to disclose the existence of the criminal records. [548-549]

Comments by a prosecutor in his closing argument referring to the defendant's appellate rights and other recourses if found guilty, although improper, did not in the circumstances require reversal of the defendant's conviction. [549-550]

At a criminal trial at which the two key witnesses for the prosecution were alleged accomplices of the defendant, the prosecutor's remark in his closing argument referring to the great number of cases solved by the use of accomplice testimony did not prejudice the defendant. [550]

A prosecutor's remark in his closing argument that the evidence of the defendant's guilt was overwhelming and "I think that's the way you should find," while highly improper, did not in the circumstances require reversal of the defendant's conviction. [550]

INDICTMENT found and returned in the Superior Court on October 23, 1974.

The case was tried before *Tisdale*, J., and a motion for a new trial was heard by him.

The Supreme Judicial Court granted a request for direct appellate review.

*Beth H. Saltzman* for the defendant.

*John T. McDonough*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant, Albert A. Daigle, was convicted of masked, armed robbery following a jury trial in the Superior Court. His motion for a new trial was denied after an evidentiary hearing. The defendant appeals, pursuant to G. L. c. 278, §§ 33A-33G, both his conviction and the denial of his motion for a new trial. We affirm the conviction.

On December 9, 1971, three masked, armed men robbed the Springfield, Massachusetts, branch of the Community Savings Bank. At the defendant's trial for this offense, both Louis Swenor and Edward Uschmann testified that they had committed this robbery with the defendant as the third robber. There was also testimony from two bank employees who related the events of the robbery but were unable to identify any of the three masked men. The testimony of Swenor and Uschmann was the only evidence linking the defendant with the crime. Testifying in his own behalf, the defendant denied any participation in the crime.

The defendant's trial counsel was aware prior to trial that Swenor and Uschmann were going to testify for the prosecu-

tion and that they would identify the defendant as their accomplice. The defendant's trial counsel did not know the specifics of either witness's prior criminal records or of any indictments pending against them, but he did know that they had been involved in various felonies. Defense counsel did not, however, move to obtain from the Superior Court Probation Office, or from any other source, the criminal record or pending indictments of the two accomplices. The Commonwealth made no voluntary disclosure of any information it may have had concerning any of these records.

Defense counsel sought to impeach Swenor with his prior criminal convictions and to indicate both accomplices' bias by showing that they were testifying in exchange for leniency on pending cases. However, after the impeachment of Swenor was abbreviated by the prosecution's successful objection to impeachment without the use of criminal records, defense counsel did not attempt directly to impeach Uschmann by eliciting from him his criminal background. The defense produced no evidence supporting the argument that promises of leniency on pending cases had been exchanged for testimony. Moreover, during Uschmann's direct testimony, the district attorney elicited his false statement, never corrected, that he had already pleaded guilty and received a sentence on the Community Savings Bank robbery.

In his closing argument, the prosecuting attorney began by referring to the defendant's appellate rights and other recourses if found guilty. He also told the jury of the great number of cases solved by the use of accomplice information. Finally, he argued that the jury should convict because he believed the "evidence is overwhelming . . . and I think that's the way you should find."

1. The defendant argues that his trial counsel's failure either to impeach the credibility of the two accomplice witnesses with their prior criminal records, or to show that their testimony was biased and motivated by a desire to obtain favorable treatment in the disposition of pending

criminal actions, amounted to ineffective assistance of counsel. We do not agree.

A two-step inquiry is required in the usual case where ineffective assistance of counsel is claimed. "There must first be an evaluation of the attorney's conduct. . . . [A] defendant need show only that the conduct of his lawyer was 'measurably below that which might be expected from an ordinary fallible lawyer.'[1] . . . In addition to a showing of incompetence of counsel, our cases usually require a demonstration of prejudice resulting therefrom." *Commonwealth v. Rondeau,* 378 Mass. 408, 412 (1979), quoting from *Commonwealth v. Saferian,* 366 Mass. 89, 96 (1974). "When the arguably reasoned tactical or strategic judgments of a lawyer are called into question, we do not 'second guess competent lawyers working hard for defendants who turn on them when the jury happen to find their clients guilty.'" *Commonwealth v. Rondeau,* 378 Mass. 408, 413 (1979), quoting from *Commonwealth v. Stone,* 366 Mass. 506, 517 (1974). "Instead, we require that such judgments be 'manifestly unreasonable,' . . . and this typically means loss of 'an otherwise available, substantial ground of defence.'" *Commonwealth v. Rondeau, supra.*

In the instant case, defense counsel's approach to apprising the jury of the criminal character of the prosecution witnesses was not manifestly unreasonable, nor did it result in the loss of any ground of defense. Instead of producing the accomplices' records in order to impeach them, defense counsel let their own admissions and the circumstances of the robbery speak to establish in the jury's minds that Swenor and Uschmann were seasoned criminals.

Throughout the course of the trial, repeated references were made to the accomplices' criminal records in the presence of the jury. First, and most obviously, the jury were

---

[1] This showing, it should be noted, is similar to that needed to prove a case of legal malpractice. *Commonwealth v. Rondeau,* 378 Mass. 408, 412 (1979). See Restatement (Second) of Torts § 299A (1965). *Moore v. United States,* 432 F.2d 730, 736 n.27 (3d Cir. 1970).

aware at all times that the very reason why the accomplices were able to testify to the events of the crime in question was that they had participated in it. Moreover, on direct examination, each of the accomplices admitted to being currently incarcerated in a house of correction. Swenor stated that he was presently serving a fifteen-year sentence and that he had "been in trouble for the best part of [his] life." Swenor and the defendant each testified to the fact that they had been acquainted while both were serving time in a Federal penitentiary. Uschmann stated to the jury that he had been involved in seven or eight bank robberies. Finally, the defense attorney stressed in his closing argument the fact that Swenor and Uschmann were convicted criminals whose testimony was not to be believed. Although one may speculate that some jurors would have been more strongly impressed by impeachment of these witnesses through introduction of their actual criminal records, we do not find the approach taken by counsel in this case to be manifestly unreasonable, particularly in light of the frequency and clarity with which the criminal character of Swenor and Uschmann was brought home to the jury. See *United States* v. *Agurs*, 427 U.S. 97, 102 n.5 (1976) (in murder trial, defense counsel's failure to obtain victim's prior record of violent crime to support argument that defendant had killed victim in self-defense does not demonstrate ineffectiveness).

Apart from impeaching the credibility of the accomplice witnesses, defense counsel also tried to raise the inference that the witnesses were biased because they were testifying against the defendant in exchange for favorable treatment regarding their own pending indictments. Defense counsel's efforts in this direction went only as far as questioning each of the witnesses on this point and alluding in closing argument to the theory that Swenor and Uschmann would not be likely to testify against their confederate except for consideration from the State. We do not find that defense counsel's failure to procure and introduce pending indictments against Swenor and Uschmann to bolster this theory

of bias amounted to ineffective assistance because it is justified as a reasonable trial tactic. See *Commonwealth* v. *Rondeau,* 378 Mass. 408, 413 (1979). The defense attorney undoubtedly was reluctant to pursue too far any claims of an arrangement to exchange testimony for leniency because, as the trial judge noted in his decision on the motion for a new trial, evidently no such arrangement existed. Thus, it was in the interest of the defendant to raise the issue of possible bias sufficiently to lodge it in the minds of the jury but not to pursue it so far that it became apparent that it was a false attack. Mere questioning of the witnesses about this on cross-examination, followed by an explanation in closing argument that Swenor and Uschmann had no other reason to turn against their criminal confederate, was sufficient to implement such a strategy.

2. The defendant argues that he was denied a fair trial either by the prosecution's introduction of false testimony by the witness Uschmann or by the subsequent failure of the prosecution to correct the inaccuracy in Uschmann's testimony. This claim stems from the fact that Uschmann incorrectly testified that he had already pleaded on and been sentenced for the Community Savings Bank robbery for which the defendant was currently being tried. In fact, the indictment against Uschmann was still pending.

The defendant argues that this case is controlled by a pair of United States Supreme Court cases establishing that reversal of a conviction is warranted if the prosecution has knowingly used false evidence which reasonably could have affected the judgment of the jury. See *Napue* v. *Illinois,* 360 U.S 264 (1959); *Giglio* v. *United States,* 405 U.S. 150 (1972). However, "[t]his is not a case where a criminal conviction has been obtained by the knowing use of false testimony and, consequently, such cases cited by the defendant as *Napue* v. *Illinois,* 360 U.S. 264 (1959), and *Giglio* v. *United States,* 405 U.S. 150 (1972), are not controlling." *Commonwealth* v. *Gilday,* 367 Mass. 474, 490 (1975).

In the instant case, the trial judge found in ruling on the motion for a new trial that, while Uschmann's statement

was untrue, it was not made with knowledge of its untruthfulness. Instead, the inaccuracy in Uschmann's answer was due to the confusion of his memory concerning the many bank robberies in which he had participated. The judge also attributed the prosecuting attorney's failure to correct the testimony to his own lack of knowledge as to whether Uschmann had pleaded guilty to this robbery, and found that he did not intend to introduce false testimony.[2]

Because we find that *Napue* and *Giglio* do not control the situation of unintentional introduction of false testimony, we do not apply the strict standard of materiality established in those cases, viz., that a conviction is invalid if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *Giglio* v. *United States, supra* at 154, quoting from *Napue* v. *Illinois, supra* at 271. Instead, we find the appropriate standard in our own cases involving the analogous situation of prosecutorial suppression of evidence favorable to the accused. "We have generally required that absent a request [for the information by defense counsel], and where the suppression by the prosecution is not deliberate, the evidence must meet a high standard of materiality, a substantial probability of altering the result [citing cases]." *Commonwealth* v. *Stone,* 366 Mass. 506, 510-511 (1974). *Commonwealth* v. *Gilday,* 367 Mass. 474, 486-489 (1975). After examining the circumstances in the case at bar, we do not find that the incorrect testimony by Uschmann had a substantial probability of altering the result. The questioning by the prosecuting attorney which led to Uschmann's inaccurate response was not directly aimed at bolstering the witness's reliability or credibility. The prosecutor was merely essaying to resolve a conflict in the accomplices' testimony as to what share each of the participants received in the proceeds of the robbery.

---

[2] Compare *Commonwealth* v. *Nelson,* 3 Mass. App. Ct. 90, 100 (1975), where a conviction was reversed because a prosecution witness knowingly testified falsely that he had received no promise that he would not be brought to trial, and the prosecutor knowingly allowed this false evidence to go uncorrected.

Uschmann apparently became confused by the series of questions and this resulted in his false response. Under these circumstances we do not find that the false information given would be likely to affect substantially the jury's impression of this witness's credibility.

A comparison of Uschmann's false testimony with the false testimony found to require reversal in *Napue* and *Giglio*, bolsters our finding that Uschmann's falsehood was not "material" to the jury's decision. In both *Napue* and *Giglio*, the witness testified falsely that he had received no promise of leniency in return for his testimony. Such a statement tends to impress the jury much more directly with the witness's good faith and absence of bias than does Uschmann's statement that he had already pleaded and been sentenced on the case. The latter statement requires a gratuitous inference by the jury in order for it to contribute to the witness's believability. The jury would have to infer that Uschmann pleaded guilty to the full charges against him and was not allowed to plead guilty to some decreased charge or given a lesser sentence in exchange for his testimony against the defendant. Moreover, Uschmann's false testimony about his pleading and sentencing in the Community Savings Bank robbery could under no circumstances erase completely the thoughts in the jury's minds of leniency and bias, because they were aware of Uschmann's involvement in a series of other bank robberies. For these reasons, we do not find that Uschmann's false testimony was sufficiently material to require a reversal of the defendant's conviction.

3. The defendant argues that the Commonwealth improperly failed to disclose to the defendant the existence of criminal records of the two accomplice witnesses. The Commonwealth is not obligated to collect and assemble the criminal records of its witnesses for the defendant. Although the defendant is entitled to access to the records, he has made no showing that he was denied such access. It appears that the defendant's trial counsel was aware that the witnesses had prior criminal records but made no attempt to

obtain them. In these circumstances there is no showing that the Commonwealth improperly withheld exculpatory evidence. *Commonwealth* v. *Adams*, 374 Mass. 722, 732 (1978).

4. We consider finally the defendant's challenge to inappropriate statements made by the prosecutor in his closing argument to the jury. The defendant argues that the prosecutor's remarks constitute reversible error. There is no question that the remarks were erroneous. However, defense counsel registered no objection or exception at trial and did not ask that curative instructions be given. Although in such circumstances we may still find reversible error, we will do so only upon a showing that a substantial risk of a miscarriage of justice was created. *Commonwealth* v. *Palmarin*, 378 Mass. 474, 477 (1979). *Commonwealth* v. *Rondeau*, 378 Mass. 408, 414 (1979). *Commonwealth* v. *Williams*, 378 Mass. 242 (1979). *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

The prosecuting attorney stated to the jury that the defendant could, if convicted, ask for a new trial or appeal to another court. We have cautioned in the past against gratuitous mention of the appellate process to the jury. See *Commonwealth* v. *Allen*, 377 Mass. 674, 680 (1979). However, the impropriety in this case was not of reversible magnitude because it did not have "the inescapable effect of reducing the jurors' appreciation of the significance of their deliberations and verdict." *Commonwealth* v. *Walker*, 370 Mass. 548, 574, cert. denied, 429 U.S. 943 (1976). Here the prosecutor was merely attempting to counteract the closing statements of defense counsel to the effect that this was to be the defendant's only day in court. The argument was improper, for it is "better to allow [the jury's preexisting] awareness [of appeals in criminal cases] to play what small part it will, if any, in the decision they reach." *Commonwealth* v. *Walker, supra* at 575. However, in the circumstances here we discern no likelihood of a miscarriage of justice, where the conflicting statements of opposing counsel, however inappropriate, probably served only to neutralize each other.

The prosecuting attorney also told the jury of the great number of cases which are solved by the use of accomplice testimony. If his words could fairly be construed as an attempt to vouch for the credibility of the accomplice testimony in the present case, it would be an improper argument. However, that is not the case here because the "statements . . . are blameless in that they do not appear to interject a personal belief in the credibility of the . . . witnesses." *Commonwealth* v. *Stone,* 366 Mass. 506, 516 (1974). Moreover, even if one characterizes the words as an argument from personal knowledge of facts not in evidence, "the information conveyed . . . could have had but little practical effect [on the jury]," *Commonwealth* v. *Roberts,* 378 Mass. 116, 123 (1979), because of the indirect and tenuous relationship of such facts to the believability of the two witnesses whom the jury heard and observed.

The prosecuting attorney also stated, "I think on all the evidence it is overwhelming that this man is guilty . . . and I think that's the way you should find." Although we strongly disapprove such commentary we do not find that the interests of justice require a reversal for this prosecutorial error. This case is similar to *Commonwealth* v. *Stone,* 366 Mass. 506, 516 n.4 (1974), in which we affirmed a conviction and wrote, "Although the prosecutor stated that various witnesses were 'truthful' or 'honest,' the context was an argumentative one, e.g., 'I submit . . . that their stories are honest'; and that when we 'evaluate their demeanor . . . I think we have to come to the conclusion that they were telling the truth.'" Furthermore, in the instant case, the prosecuting attorney mitigated the effects of his statements upon the jury by stressing that the jury were the sole judge of the facts and that his arguments were not to be treated as evidence. The trial judge also properly reenforced these concepts in his charge to the jury so that no grave risk of prejudice to the defendant was occasioned.

*Order denying motion for
new trial affirmed.*

*Judgment affirmed.*