COMMONWEALTH *vs.* ALEXANDRE V. GAETEN.

Middlesex.    October 12, 1982. — March 29, 1983.

Present: GRANT, ROSE, & SMITH, JJ.

*Rape. Practice, Criminal,* Argument by prosecutor, Instructions to jury, Voir dire, Assistance of counsel, Polling of jury. *Evidence,* Relevancy and materiality.

In the circumstances a prosecutor's use of the expressions "I think" and "I suggest," to introduce possible inferences during closing argument to the jury at a rape trial, did not constitute improper expressions of her opinion or belief. [525-527]

At a rape trial certain lines of closing argument by the prosecutor to the jury concerning testimony as to statements by the defendant to the police and to the victim did not misstate the evidence. [527-529]

At the trial of an indictment charging rape, the judge's instructions to the jury regarding consciousness of guilt were warranted by testimony concerning the defendant's voluntary statement to police on the night of his arrest that he had not had sexual intercourse with the victim, and the judge's language which the defendant challenged on appeal, to which a proper specific objection had not been taken, presented no substantial risk of a miscarriage of justice, either by imposing a testimonial burden on the defendant, by implying that the judge did not believe him, or by reducing the Commonwealth's burden of proof. [529-531]

At a criminal trial, an irregularity in the judge's instruction to the jury defining evidence, which was followed by a thorough charge on reasonable doubt, presented no substantial risk of a miscarriage of justice. [531]

The judge at a rape trial did not abuse his discretion in excluding evidence as to the victim's opposition to abortion as bearing on whether she fabricated the charge. [531]

The judge at a rape trial did not abuse his discretion in refusing to ask the jurors whether they would tend to give more credence to the testimony of police officers than to that of ordinary citizens or in refusing to ask the jurors whether their decision in this case might be affected by recent publicity about other rape cases. [531-532]

The defendant in a criminal case was not deprived of the effective assistance of counsel by his attorney's failure to file motions for a required

finding of not guilty or to suppress the defendant's statement to the police where the record demonstrated little likelihood that such motions would have succeeded; or by his attorney's failure to object to the jury charge and closing argument; or by his attorney's failure to seek exclusion of evidence that the victim's sister had died recently, where that decision was arguably a reasoned tactical judgment and where, in each alleged instance of ineffective assistance of counsel, the defendant had demonstrated no serious prejudice from his attorney's conduct. [532-534]

At a criminal trial there was no merit to the defendant's contention that the judge erred in refusing to poll the jury after they rendered their verdict. [534]

INDICTMENT found and returned in the Superior Court Department on June 8, 1981.

The case was tried before *Irwin,* J.

*Rikki J. Klieman* (*Max W. Beck* with her) for the defendant.

*Marian T. Ryan,* Assistant District Attorney, for the Commonwealth.

ROSE, J. The defendant appeals from his rape conviction in the Superior Court. He raises a number of issues on appeal. He seeks reversal on the ground that improper statements by the prosecutor in her closing argument denied him a fair trial. He also claims that reversible error occurred in the jury instructions on reasonable doubt and consciousness of guilt, the exclusion of certain evidence, the judge's refusal to ask certain questions of the venire on voir dire, the failure to provide effective assistance of counsel, and the judge's refusal to poll the jury after the verdict. We affirm the conviction.

We shall recount facts only as necessary for a determination of the issues raised by the defendant.

1. *Improper closing argument.* The defendant argues that the prosecutor's closing argument was improper because she misstated the evidence and expressed her personal belief as to the credibility of the witnesses and the guilt of the defendant. The bounds of proper argument are well established. "Counsel may argue as to the evidence and the

fair inferences from the evidence." *Commonwealth* v. *Earltop*, 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring). *Commonwealth* v. *Burke*, 373 Mass. 569, 574-575 (1977). See also *Commonwealth* v. *Ferreira*, 381 Mass. 306, 316 (1980). Where, as here, there has been no objection to the allegedly improper remarks, we review the prosecutor's summation in its entirety to ascertain whether any error was committed, and, if so, whether it has created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416 (1978), and cases cited. *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 271 (1982).

The defendant points to several instances where the prosecutor used the phrase "I think."[1] While the use of this phrase is unfortunate, it is not always an expression of personal belief. See *Commonwealth* v. *Stone*, 366 Mass. 506, 516 n.4 (1974); *Commonwealth* v. *Snyder*, 10 Mass. App. Ct. 896 (1980). See also *Commonwealth* v. *Ferreira*, 381 Mass. 306, 317 (1980). Contrast *Commonwealth* v. *Daigle*, 379 Mass. 541, 550 (1980), where the court disapproved the prosecutor's statement "I think . . . that this man is guilty" but, in the circumstances there considered, did not find

---

[1] Specifically, the defendant points to the following statements by the prosecutor:

"I think . . . [the] differences [between the victim's and her brother-in-law's testimony as to what the victim told him directly after the occurrence] are accounted for in a number of ways. First of all, I think it's obvious from . . . [the victim that] she has some difficulties in the language."

"What does . . . [the defendant] have to gain by taking the stand and seeking to convince you of his version of what happened? I think that's obvious. I think it's obvious what the defendant seeks to gain in this case."

"Are those reasonable stories? I think that when you go out into the jury room that is one of the things you have to keep in mind."

"Counsel . . . suggested to you why didn't we know about what the other problem was that was causing her [the victim] to use the tampon. I think that's irrelevant. Whatever personal health problems she may have been having is not relevant to this case."

reversible error. It is clear from the prosecutor's argument as a whole that she was using this phrase rhetorically to point out possible inferences from the evidence. Counsel was free to argue the matters introduced by "I think." The jury could not have interpreted this phrase to express the prosecutor's personal opinion or belief. In such a circumstance, the precise form of the argument should not govern. See *Commonwealth* v. *Nordstrom*, 364 Mass. 310, 315 (1973).

The defendant also argues that the prosecutor's frequent use of the phrase "I suggest," instances of which need not be enumerated here, was improper. This phrase is a reasonable way of placing inferences favorable to the Commonwealth's case before the jury. See *Commonwealth* v. *Drayton*, 386 Mass. 39, 52-53 (1982). Neither on its face nor in the particular contexts in which it was used did the phrase convey the prosecutor's personal belief or opinion. The statements preceded by "I suggest" were based on the evidence or fair inferences from it. Contrast *Commonwealth* v. *Hogan*, 12 Mass. App. Ct. 646, 651-652 (1981).

The prosecutor's remark about the police officer's testimony did not misstate the evidence.[2] See *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 417 (1978); *Commonwealth* v. *Smith*, 387 Mass. 900, 907 (1983). The police officer testified that the defendant, after his arrest, volunteered that he and the victim had not had intercourse that night. On cross-examination, the officer admitted that those exact words did not appear in his report made that same night. The defendant denied ever having made such a statement. When the prosecutor's statement is read in the context of

---

[2] Referring to the defendant's volunteered statement at the time of his arrest that he never had intercourse with the victim, the prosecutor stated:

> "Counsel suggests that the police officer didn't write that in his report. The officer did write in his report what he told you was [*sic*], he said they spent the evening together talking. No intercourse."

both closing arguments, it is clear that the prosecutor was not denying the absence from the police report of defendant's volunteered statement. Rather, the prosecutor was implying that what the police officer did write in his report (i.e., that the defendant and the victim had spent the evening together talking) was equivalent in the circumstances to writing down the defendant's statement that there had been no intercourse. That was proper argument.

The defendant argues that another of the prosecutor's statements, reprinted in the margin, misstated the evidence concerning threats of force by the defendant.[3] At trial, the victim testified that she told the defendant she could not have intercourse with him because she was menstruating. (In fact, the victim was not menstruating but was wearing a tampon because of a vaginal discharge.) The prosecutor's statement about the tampon is based on the following testimony by the victim:

> "[He] keep on, you know, taking my things off and I told him that he wouldn't take my clothes off. Then he told me that if I didn't take it off he would take it off. And I told him that I couldn't have sexual intercourse because I am — he said to take it off . . . . [H]e told me if I didn't take my clothes off he will take it off. He continued to touch me and tried to get it off. And I told him that I will take it off myself."

By assuming that "it" referred to the victim's tampon and not to her clothing, the prosecutor may have stretched the testimony to its limit. But, in view of the victim's difficulty with the English language (which led her to confuse "off" and "out" at other points in her testimony) and her apparent reluctance to testify about some graphic details of the incident, we cannot say that the prosecutor's statement

---

[3] "She is telling him she has a tampon, she can't have intercourse with him. And he tells her, you take it out or I'll pull it out of you, and she says to him, you are not going to touch me."

was not a fair inference from the evidence. See *Commonwealth* v. *Downey*, 12 Mass. App. Ct. 754, 760-761 (1981); *Commonwealth* v. *Moure, post* 924, 925 (1983). Even if the statement were an impermissible inference, we would find no substantial risk of a miscarriage of justice from this isolated remark in view of the judge's curative instructions that "[c]ertainly the closing arguments of counsel are not evidence in this case," and that "I cannot suggest to you what the facts are in the case . . . ." *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 537-538 (1971). *Commonwealth* v. *Dougan*, 377 Mass. 303, 311-312 (1979). This is not a case where the prosecutor "repeatedly and deliberately sailed unnecessarily close to the wind." *Commonwealth* v. *Redmond*, 370 Mass. 591, 597 (1976). Compare *Commonwealth* v. *Mosley*, 6 Mass. App. Ct. 451, 453 (1978), with *Commonwealth* v. *Burke*, 373 Mass. 569, 576-577 (1977), and *Commonwealth* v. *Smith*, 387 Mass. at 906-912 (1983).

2. *Adequacy of jury instructions.* Testimony concerning the defendant's volunteered statement on the night of his arrest that he had no intercourse with the victim warranted an instruction on consciousness of guilt. The defendant argues that this instruction, reproduced in the margin,[4] was erroneous in that it imposed a testimonial burden on the defendant and implied that the judge did not believe him. The defendant also claims that this instruction lowered the Commonwealth's burden of proof. Although the defendant objected at trial to the consciousness of guilt instruction on the ground that there was insufficient evidence to warrant it, no specific objection was made to the portion that the defendant now claims is erroneous. Thus, we review only to

---

[4] "Certainly in determining consciousness of guilt evidence you should do so carefully, and be sure that it in fact does evidence a consciousness of guilt and not something else. Because certainly I think you can understand that certain defendants at certain times finding themselves in a factual situation in which they might feel that they are losing control might resort to something that otherwise would be described as consciousness of guilt and do so foolishly with an effort to extricate themselves without understanding that the best refuge indeed is always the truth."

ascertain whether this case presents a "substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967).

We do not agree that this statement could be interpreted by the jury to impose an obligation to testify on the defendant. The remark that "the best refuge . . . is always the truth" is couched in a sentence which tends to excuse and explain the defendant's behavior even if the jury chose to believe that he made a false statement to the police officer. Moreover, the phrase "resort to something" could not lead the jury to believe that the judge doubted the defendant's credibility. The judge's careful and repeated use of the word "might" eliminated any possibility that the jury would believe that, in the judge's opinion, this particular defendant had "resort[ed] to something." We note that the judge followed this portion of the charge with a disclaimer of any personal conviction. "That isn't to say that there isn't consciousness of guilt evidence, it's up to you to determine whether that exists in this trial or not."

There is no merit in the defendant's contention that the charge lowered the Commonwealth's burden of proof because it did not require the Commonwealth to prove beyond a reasonable doubt that the defendant lied to the police officer before the jury could infer consciousness of guilt. The judge prefaced this instruction with the statement that "lying with reference to material facts . . . can be considered as consciousness of guilt if in fact that evidence has been established to you *beyond a reasonable doubt*" (emphasis supplied).[5]

---

[5] We need not decide for the purpose of this opinion whether facts from which consciousness of guilt may be inferred must be proved by the Commonwealth beyond a reasonable doubt. Certainly the Commonwealth must prove beyond a reasonable doubt every essential element of the offense charged against a defendant. *Commonwealth* v. *Harrington,* 379 Mass. 446, 452-453 (1980), and cases cited. In this case, any false statement by the defendant to the police officer about whether intercourse occurred is not an essential element of the crime of rape, nor does it bear upon the existence of criminal intent. In any event, evidence of consciousness of guilt is not sufficient by itself to support a conviction. *Commonwealth* v. *Smith,* 368 Mass. 126, 129 (1975).

The defendant argues that the jury instruction defining evidence effectively diminished the Commonwealth's burden of proof. The judge defined evidence as the exhibits, "the testimony that you have heard here from the witness stand that you believe, and any inferences that you can draw from facts that are established to you beyond a reasonable doubt." The judge subsequently gave a thorough charge on reasonable doubt based in part on *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850).

This irregularity in the definition of evidence presents no substantial risk of a miscarriage of justice. It did not preclude the jury from considering all the testimony in order to decide whether they believed it. The instruction properly prevented the jury from basing reasonable doubt on testimony that they did not believe, but it did not foreclose them from entertaining reasonable doubt, even if they should disbelieve the defendant's testimony. This charge has none of the defects found in *Connolly* v. *Commonwealth*, 377 Mass. 527, 531-538 (1979), where the instruction on self-defense could have led the jury to believe that the defendant bore some burden of proving himself innocent.

3. *Evidentiary rulings.* The defendant argues that the judge below erred in excluding evidence that the victim was strongly opposed to abortion. He claims that the victim's opposition to abortion, in view of her fear of pregnancy, would have a rational tendency to establish a motive for her to fabricate a charge of rape. The judge did not abuse his discretion in excluding such evidence. See *Commonwealth* v. *Haywood*, 377 Mass. 755, 760-763 (1979); *Commonwealth* v. *Joyce*, 382 Mass. 222, 229-231 (1981); *Commonwealth* v. *Glen*, 12 Mass. App. Ct. 317, 321-322 (1981). See also Liacos, Massachusetts Evidence 408-411 (5th ed. 1981). We have examined the defendant's other evidentiary claim and find it totally without merit.

4. *Adequacy of voir dire.* The defendant claims that by failing to ask certain questions of the venire the judge vio-

lated the second paragraph of G. L. c. 234, § 28. The judge did not abuse his discretion in refusing to ask whether members of the venire would give more credence to the testimony of police officers than to that of ordinary citizens. The second paragraph of § 28 requires that such questions be asked only when there is a substantial risk that extraneous factors might enter into the jury's decision. There is no showing that the judge abused his discretion in determining that no such risk existed. *Commonwealth* v. *Nickerson,* 388 Mass. 246, 248-249 (1983). *Commonwealth* v. *Jones,* 9 Mass. App. Ct. 103, 114-115 (1980), *S.C.* 382 Mass. 387 (1981). See also *Commonwealth* v. *Campbell,* 378 Mass. 680, 695-696 (1979); *Commonwealth* v. *Shelley,* 381 Mass. 340, 352 (1980). The judge also refused to ask the venire whether their decision in this case might be affected by recent publicity about other rape cases. The judge did not abuse his discretion in deciding that there was no possibility of prejudice as a result of general rape publicity. "The danger of prejudice is less where the publicity is 'cast in fairly general terms' and does 'not specifically relate to proceedings before the court.'" *Commonwealth* v. *Hanscomb,* 367 Mass. 726, 728 (1975). *Commonwealth* v. *O'Toole, post* 927, 928 (1983).

5. *Ineffective assistance of counsel.* The defendant alleges that his trial counsel rendered ineffective assistance because he failed (1) to file a motion for a required finding of not guilty; (2) to file a motion to suppress the defendant's statement to the police; (3) to file a motion in limine or to object to evidence of the recent death of the victim's sister; and (4) to object to the jury charge and the closing argument. There was no motion for a new trial, and the defendant seeks to raise this issue for the first time on appeal. We therefore review only to ascertain whether there has been a substantial risk of a miscarriage of justice. *Commonwealth* v. *Mercado,* 383 Mass. 520, 526 (1981). Where the trial judge has ruled on the issue of ineffective assistance of counsel, we give substantial deference to his evaluation of

counsel's representation. *Commonwealth* v. *Garcia,* 379 Mass. 422, 435-436 (1980). In this case, although the judge did not have occasion to rule formally on the issue, he stated that he had been impressed by the advocacy of defense counsel.

Trial counsel's failure to make a motion for a required finding of not guilty or a motion to suppress the defendant's statement, especially where the record demonstrates little likelihood that any such motions would have succeeded, is not the kind of conduct falling measurably below what is expected of an ordinary, fallible attorney that constitutes ineffective assistance of counsel. See *Commonwealth* v. *Garcia,* 379 Mass. at 434; *Commonwealth* v. *Daigle,* 379 Mass. at 544. A defense counsel is not seriously incompetent if he fails to make all possible pretrial motions. *Commonwealth* v. *Saferian,* 366 Mass. 89, 98-99 (1974).

The decision of the trial counsel not to seek exclusion of the evidence that the victim's sister had died recently was "an arguably reasoned tactical or strategic judgment" that we will not second guess. See *Commonwealth* v. *Rondeau,* 378 Mass. 408, 412-413 (1979). The victim's brother-in-law, who testified concerning the victim's fresh complaint, admitted to being preoccupied and forgetful as a result of his wife's death. Defense counsel may have contemplated using the death and the resulting confusion to impeach the testimony of the brother-in-law insofar as it tended to corroborate the victim's testimony.

Trial counsel's failure to object to those portions of the summation and jury charge now claimed to be erroneous is arguably short-sighted, but it is not the type of serious incompetency approaching malpractice that constitutes ineffective assistance of counsel. See *Commonwealth* v. *Garcia,* 379 Mass. at 434. Contrast *Commonwealth* v. *Westmoreland,* 388 Mass. 269, 271-275 (1983); *Commonwealth* v. *Street,* 388 Mass. 281, 285-288 (1983). Moreover, defendant points to no serious prejudice to him resulting from any alleged shortcoming by his trial attorney. See *Com-*

*monwealth* v. *Daigle,* 379 Mass. at 544; *Commonwealth* v. *Garcia,* 379 Mass. at 434. Because the defendant's brief does not specify which "other available witnesses" trial counsel failed to call, or what their testimony might have been, we do not address that contention.

6. *Polling the jury.* The defendant's claim that the judge erred in refusing to poll the jury after they rendered their verdict is without merit. Whether to poll the jury lies within the discretion of the trial judge. Mass.R.Crim.P. 27(d), 378 Mass. 897 (1979). No abuse of discretion was shown here. See *Commonwealth* v. *Stewart,* 375 Mass. 380, 389-390 (1978).

*Judgment affirmed.*