## Commonwealth *vs.* Blandon Mitchell.

Suffolk. January 4, 1999. - February 9, 1999.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Practice, Criminal,* Assistance of counsel, Argument by prosecutor, Capital case. *Evidence,* Prior conviction.

At a murder trial, defense counsel's decision not to impeach the Commonwealth's witnesses with their prior convictions and pending indictments created no tactical advantage for the defendant; however, it did not amount to ineffective assistance of counsel, where counsel brought out frequently and clearly on cross-examination of those witnesses that they were armed drug dealers with experience with and extensive knowledge of the criminal justice system. [853-856]

At a murder trial, the prosecutor's remarks in closing argument were not, in context, improper expressions of his personal knowledge or belief. [856-857]

No substantial likelihood of a miscarriage of justice was created by the prosector's improper appeal to the sympathy of the jury ("[the victim] didn't have a trial"), where the remarks were brief, isolated, and not a significant portion of the argument, and where the judge gave clear and careful instructions to the jury describing the proper role of closing argument. [857-858]

At a murder trial, the prosecutor's remarks to the jury on the credibility of the witnesses were fair comment and proper to rebut the defendant's attack on the witnesses' credibility, and the judge's instructions made clear to the jury that the remarks were merely argument. [858-859]

The cumulative effect of challenged statements in the prosecutor's closing argument at a murder trial did not create a substantial likelihood of a miscarriage of justice. [859]

Indictment found and returned in the Superior Court Department on March 26, 1992.

The case was tried before *Vieri Volterra,* J., and a motion for a new trial was heard by him.

*Stephen B. Hrones* for the defendant.

*Jane A. Sullivan,* Assistant District Attorney, for the Commonwealth.

Marshall, J. The defendant was convicted of murder in the first degree on the theory of deliberate premeditation. While the

defendant's appeal has been pending, he moved for a new trial claiming that his trial counsel was ineffective in failing to impeach the Commonwealth's three main witnesses with evidence of their prior convictions and charges pending against them. The motion was remanded to the trial judge, who denied it. The defendant also appeals from the denial of that motion.

In addition to his claim of ineffective assistance of counsel, the defendant claims he was denied a fair trial by improper statements made by the Commonwealth in closing argument. He also asks that, pursuant to G. L. c. 278, § 33E, we either order a new trial or reduce the verdict to manslaughter. We affirm the conviction, and decline the defendant's request to exercise our statutory power.

1. The Commonwealth presented evidence from which the jury could have found the following. On November 5, 1990, the defendant, a member of the street gang known as the Big Head Boys, shot the victim, Bryant Tarpley, because the victim sold drugs for someone other than the Big Head Boys on their turf. The medical examiner who performed the autopsy on the victim testified that the victim, who was seventeen years old, died as a result of two gunshot wounds, one to the head and one to the neck. The Commonwealth presented the testimony of three individuals, also members of the Big Head Boys: Tyrone Dickerson, Steven Niles, and Arthur Dickerson. Their testimony was the foundation of the Commonwealth's case.[1] Each witness testified that the defendant had admitted to him, or in his presence, that he had killed the victim. They also testified to circumstantial facts suggesting that the defendant was the killer.

There was evidence that Craig Holiday (whose whereabouts at the time of trial were not known) was the leader of the Big Head Boys, and that the defendant was his "first lieutenant." There was evidence that the defendant was acting on instructions from Holiday when he shot the victim.[2]

2. *Ineffective assistance of counsel.* The defendant challenges

---

[1]The defendant did not make any statement to the police and there was no evidence other than the testimony of the three witnesses linking the defendant to the killing.

[2]Tyrone Dickerson testified that the defendant had said to him: "Craig told me to kill him, to kill [Tarpley]," and described to Tyrone how he had killed the victim. Steven Niles testified that he heard a gunshot that sounded to him as if it came from the apartment where the victim was killed and that when the defendant joined him immediately afterward, the defendant said that the victim was dead, described the shooting and, motioning with his hands, said,

the conduct of his trial counsel for failing to use evidence of prior convictions and pending charges to impeach the Commonwealth's three key witnesses, the members of the Big Head Boys.[3] The defendant raised this same claim of ineffective assistance of counsel in a motion for a new trial that was denied by the trial judge. He appeals that decision and argues, in addition, that ineffective assistance of his trial counsel created a substantial likelihood of a miscarriage of justice warranting relief under G. L. c. 278, § 33E. Because our standard of review under that statute is more favorable to the defendant than is the constitutional standard for determining the ineffectiveness of counsel, *Commonwealth* v. *Hardy*, 426 Mass. 725, 730 (1998), we consider "whether there was an error in the course of the trial [by defense counsel] and, if there was, whether that error was likely to have influenced the jury's conclusion," *id.* at 730, quoting *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). We consider the defendant's claim "even if the alleged error on the part of trial counsel does not constitute conduct falling 'measurably below' that of 'an ordinary fallible lawyer.' " *Commonwealth* v. *MacKenzie*, 413 Mass. 498, 517 (1992).

The judge found that trial counsel was "fully aware" of the criminal histories of the Commonwealth's witnesses (certified copies of the convictions had been obtained by trial counsel before the trial) and that she had made a "tactical" decision not to use their criminal records to impeach them. Cf. *Com-*

"Got him in the neck." Niles also testified the defendant later told him that he shot the victim in the head, as well as the neck, and that the victim was killed "to set an example." Arthur Dickerson testified that the defendant said, "He had to do it, he did it," and that Craig Holiday had said, "Can't nobody come on the block and take money out of our pockets." Others in the gang had agreed after the shooting that the "dude deserved to die."

[3]The defendant complains that the jurors were unaware that Tyrone Dickerson had been found delinquent by a jury in the Boston Juvenile Court on three occasions (for possession of ammunition, possession of a Class B controlled substance, and for distributing a controlled substance) and that at the time of trial he had three pending cases against him (possession of a Class D controlled substance, trespassing, and curfew violation). He complains that certified copies of Steven Niles's convictions of assault with intent to murder, possession of a firearm, assault by means of a dangerous weapon, and assault and battery by means of a dangerous weapon, were not introduced, and that the jury heard only of Niles's "single brush with the law." As to Arthur Dickerson, the defendant complains that a certified copy of Dickerson's conviction for possession of a firearm was not introduced, and that the jurors did not hear that he had two cases pending against him (for assault with intent to kill and assault and battery by means of a dangerous weapon, a knife).

*monwealth* v. *Daigle*, 379 Mass. 541, 543 (1980) (defense counsel did not know specifics of witnesses' prior criminal records or indictments pending against them and did not seek to obtain such records). We see no tactical advantage to the defendant in counsel's decision not to impeach the Commonwealth's witnesses with available evidence of their prior convictions and charges pending against them. We nevertheless reach the same conclusion as did the judge that the failure to use the available evidence does not amount to ineffective assistance of counsel in this case.

In *Daigle, supra,* we concluded that, where defense counsel did not produce criminal records of the defendant's accomplices in order to impeach them, but did establish that the accomplice-witnesses were "seasoned criminals" through their own admissions and the circumstances of the robbery, defense counsel's approach was not manifestly unreasonable. *Id.* at 544. For much the same reasons as we explained in that case, we conclude that counsel's approach in this case did not create a substantial likelihood of a miscarriage of justice. The judge observed, and based on our own review of the record we concur in his judgment, that the defendant's trial counsel brought out frequently and clearly on cross-examination of the Commonwealth's witnesses, "the criminal character of all three of these individuals," and "clearly demonstrated to the jury that each one was a seasoned criminal."[4] The judge reasoned that nothing further of any significance would have been gained if counsel had introduced the records of the witnesses' convictions. See *Daigle, supra* at 545. Recently, in *Commonwealth* v. *Carmona, ante* 268, 275 (1998), we agreed with the conclusions of the motion judge who, as here, was also the trial judge, that the impeachment value of criminal records of the Commonwealth's

[4]As noted by the judge in ruling on the motion for a new trial, defendant's trial counsel elicited on cross-examination that Tyrone Dickerson was a drug dealer who earned thousands of dollars selling crack cocaine, that he was a member of the "Big Head Boys," and that he owned a .38 caliber pistol. The judge further noted that cross-examination by trial counsel established that Steven Niles was serving a lengthy prison sentence for assault with intent to murder, that he had used a gun to commit the offense, and that he sold drugs for Craig Holiday permitting him to earn several thousand dollars a week. Counsel also established that Niles had great familiarity with firearms and that he had fired .38 caliber, .25 caliber, and .22 caliber handguns. On cross-examination, trial counsel established that Arthur Dickerson had been incarcerated for possessing a firearm the year before the trial, that he was on probation, that he was unemployed, and that he both sold and used drugs.

witnesses would have been minimal where the evidence established that the defendant and witnesses were operating in a criminal environment. *Id.* In this case the evidence demonstrated, at least as strongly as the evidence in the *Carmona* case, that the Commonwealth's witnesses had criminal backgrounds and were engaged in criminal activities. This jury surely knew that the three witnesses were armed drug dealers, each of whom had experience with, and extensive knowledge of the criminal justice system. Trial counsel made that point in her opening statement and again forcefully in her closing argument to the jury. The jury were well aware that the witnesses not only were drug dealers, but that Niles and Arthur Dickerson had been incarcerated on conviction of serious offenses as armed criminals. In addition, the Commonwealth proved that statements to the police two years after the killing from the three gang members had been obtained without the others knowing the content of their respective statements, i.e., they had not conferred before they gave their statements to the police. Such powerful and incriminating testimony would not have been undercut by impeachment of the witnesses with their prior convictions.

The trial judge did not expressly address the defendant's claim that his trial counsel failed to impeach Tyrone Dickerson and Arthur Dickerson with evidence of criminal charges and probation violation matters that were pending against them. While pending charges and probation violations may be used to show that a witness is biased in favor of the Commonwealth, counsel's failure to elicit such evidence for that purpose does not necessarily constitute reversible error. A preliminary showing that a witness was providing testimony favorable to the Commonwealth in the hope of receiving more lenient treatment on his pending matters, or that inducements or promises had been made in exchange for his testimony, is required. *Commonwealth* v. *Roberts*, 423 Mass. 17, 20-21 (1996). There has been no such showing here. Based on our own review of the entire record, we conclude that the defendant has failed to show that trial counsel's failure to introduce further evidence of the criminal records of the Commonwealth's witnesses likely affected the outcome of this case.

3. *The prosecutor's closing argument.* The defendant did not object at trial to the prosecutor's closing argument. On appeal, he challenges several statements claiming they constituted improper personal opinion of the evidence. In referring to the

defendant's alleged admissions of guilt to the Commonwealth's witnesses, the prosecutor said, "Believe him what he said from his own mouth . . . ." In referring to the witnesses's testimony, the prosecutor stated, "I suggest to you there's some corroboration . . . . There's some credibility there," and "I suggest to you that that's probably what happened." Viewed in context, these remarks were not presented, explicitly or implicitly, as personal opinion. The prosecutor's urging the jury to "believe" certain testimony, and to find "corroboration" and "credibility" in certain respects was proper argument. *Commonwealth* v. *Dixon*, 425 Mass. 223, 232-233 (1997). His use of the phrases "I think" and "I suggest" to preface some remarks did not, viewed in their proper context, imply that the prosecutor had personal knowledge or was stating a personal belief. See *Commonwealth* v. *Santiago*, 425 Mass. 491, 499 (1997), *S.C.*, 427 Mass. 298 (1998) (isolated use of first-person pronouns does not amount to serious error); *Commonwealth* v. *Silva*, 401 Mass. 318, 329 (1987) (phrases "I submit" and "I suggest" not improper testimonial interpretation but permissible rhetorical device to urge jury to draw inferences from evidence). The jury are presumed to recognize that the prosecutor is an advocate, not a witness. See *Commonwealth* v. *Sanna*, 424 Mass. 92, 107 (1997); *Commonwealth* v. *Coleman*, 366 Mass. 705, 714 (1975).

The defendant claims the prosecutor improperly appealed to the jury's sympathy for the victim when he said, "[W]e're talking about a human being here: [the victim] who will be seventeen forever because he was killed," and later when he told the jury, "[the defendant] has all sorts of rights. But, you know Bryant Tarpley didn't have a jury. He didn't have a trial. He didn't have any opportunity for that. No breaks." These remarks should not have been made. We do not accept the Commonwealth's assertion that the remarks were mere attempts to "humanize" the victim. But the error did not create a substantial likelihood of a miscarriage of justice. The remarks were isolated and were not a significant or even a focal portion of the prosecutor's closing. Cf. *Commonwealth* v. *Worcester*, 44 Mass. App. Ct. 258, 264 (1998) (repeated claim by prosecutor that defendant had determined victim's life was of no value combined with prosecutor's request to jury to "do something" about killing prejudicial error). Moreover, the brief comments were adequately offset by the judge's careful and clear instructions describing the role of closing argument, and telling the

jury not to be swayed by prejudice or sympathy.[5] See *Commonwealth* v. *Sanna, supra* at 107-108; *Commonwealth* v. *DeCicco*, 44 Mass. App. Ct. 111, 121 (1998).

The defendant challenges other remarks, claiming they impugned his character and, in effect, implied guilt by association. In referring to the witnesses, the prosecutor stated, "[I]f we have to go to hell to get our witnesses to convict somebody honestly for what happened, we will do it. We don't have doctors and nurses coming in here." He later added, "We're not going to have priests coming in here to testify [to] what they saw. You're going to have the people that were there." The prosecutor's reference to the criminal background of the witnesses was a fair response to the defendant's attack on the witnesses' credibility. *Commonwealth* v. *Dixon*, 425 Mass. 223, 230-231 (1997). The prosecutor did not suggest to the jury that the defendant should be viewed in the same way as the witnesses. Cf. *Commonwealth* v. *Worcester, supra* at 265 (prosecutor improperly implied that defendant, who had no criminal record, was "drug abusing criminal"). Even if the prosecutor's statement was overly dramatic, the judge's instructions made clear to the jury that it was but argument.[6] *Sanna, supra* at 107. The prosecutor also said that the defendant was a "right-hand man of Craig [Holiday], and Craig is a fugitive." The statement

[5]At the outset of the trial, before opening statements, the judge told the jury that the opening and closing statements "are not evidence" and accordingly the jury were to take no notes during counsels' arguments. In his instructions to the jury, he carefully distinguished between evidence on the one hand and argument on the other: "The opening statement and the summation are not evidence. I ask you not to consider them as evidence. . . . The summation, which is the highest art of lawyering, is a persuasive statement that is made to the jury to persuade the jury in respect to the evidence so that the jury can reach an ultimate conclusion that is a correct one. But as I suggested to you, it's not evidence. You may only consider the evidence that you receive from the witnesses and from the exhibits." He later stressed: "You should determine the facts of this case based solely on a fair consideration of the evidence. You are to be completely impartial and not be swayed by prejudice or sympathy, personal likes or dislikes toward one side or the other. You must decide this case only on what you have heard in the courtroom from the witness stand and from the exhibits. . . . [Y]ou have to decide this case on what was presented here from the witness stand and from the exhibits."

[6]In addition, at the request of the defendant and immediately before the jury retired the judge further instructed: "Counsel remind me that I should charge you that in our country there is no guilt by association. Mere presence at the scene of a crime is not sufficient to prove either murder in the first degree or murder in the second degree beyond a reasonable doubt."

of fact was supported by the evidence; there was evidence that Holiday was "wanted on a default [warrant]."

The defendant argues that the cumulative effect of all these statements denied the defendant his right to a fair trial because credibility was the crux of the case. Moreover, he says, this was a close case for the jury: it deliberated over several days.[7] This case is unlike *Commonwealth* v. *Worcester, supra,* where the Appeals Court concluded that improper closing argument by the prosecutor required a new trial because it "possibly [made] a difference in the jury's conclusions," *id.* at 268, quoting *Commonwealth* v. *Kozec,* 399 Mass. 514, 518 (1987) (requiring a new trial). In *Commonwealth* v. *Worcester, supra,* the defendant testified, his account was pitted against that of the other witnesses, and the improper attack on his credibility went to the crucial issue in the case. Moreover, in that case the prosecutor's improper remarks were not isolated, but numerous, were challenged by the defendant at trial, and were not adequately addressed by the judge in his instructions to the jury. We have considered here the cumulative effect of all the challenged statements, including those that were proper, and are confident, in light of the careful instructions to the jury, that the prosecutor's closing argument did not create a substantial likelihood of a miscarriage of justice.

4. *Plenary review under G. L. c. 278, § 33E.* The defendant's arguments under G. L. c. 278, § 33E, focus on the same alleged errors that we previously have addressed. We see no reason to grant a new trial. The defendant executed Bryant Tarpley because he sold drugs for someone other than the gang to which the defendant belonged. Even if the killing was undertaken at the suggestion of, or indeed the instruction of, the leader of the gang — and there was scant evidence to that effect — these are not circumstances that, without more, support a reduction in sentence.

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*

---

[7]The trial commenced on May 3, 1993, with testimony beginning on May 4. The Commonwealth rested on May 5, 1993. The jury deliberated on May 5, 6, 10, and 11, 1993, when they returned a verdict of guilty.