COMMONWEALTH *vs.* MARCOS SENA.

Middlesex. April 6, 1999. - May 19, 1999.

Present: WILKINS, C.J., LYNCH, FRIED, MARSHALL, & IRELAND, JJ.

*Constitutional Law,* Assistance of counsel. *Due Process of Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Reciprocal discovery, Capital case.

At a murder trial, defense counsel's failure to comply with a pretrial recipro-cal discovery order until after the trial had begun, that resulted in the judge's precluding the defendant from using an exculpatory report of a defense investigator containing information impeaching the only eyewit-ness to the shooting, constituted ineffective assistance of counsel and cre-ated a substantial likelihood of a miscarriage of justice. [594-595]

Discussion of remedies for a violation of a discovery order in a criminal proceeding. [595-596]

INDICTMENTS found and returned in the Superior Court Depart-ment on May 19, 1992.

The cases were tried before *Christine M. McEvoy,* J.

*Greg T. Schubert (Jean M. Fielding with him)* for the defendant.

*Marian T. Ryan,* Assistant District Attorney, for the Com-monwealth.

IRELAND, J. A jury convicted the defendant of murder in the first degree, under a theory of deliberate premeditation, and of unlawful possession of a firearm. Represented by new counsel on appeal, the defendant challenges his convictions on the fol-lowing grounds: (1) the prosecutor made improper remarks dur-ing his closing argument; (2) the judge erroneously precluded exculpatory evidence; and (3) he was denied the effective as-sistance of counsel. He also urges us to exercise our authority pursuant to G. L. c. 278, § 33E, to reduce his murder convic-tion or to order a new trial. We conclude that the defendant is entitled to a new trial because defense counsel's failure to comply with a pretrial discovery order led to an order that cre-ated a substantial likelihood of a miscarriage of justice.

1. *Facts.* The jury were warranted in finding the following

facts. On March 21, 1992, the defendant and his girl friend, Maureen Otero, were driving through the streets of Lowell. The defendant noticed a man, Angel Barretto, walking with the defendant's former girl friend, who was then dating Barretto. The defendant pulled to the side of the road, where he fought with Barretto, his former girl friend, and her daughter. Barretto and his girl friend were on their way to attend a christening party at a house near the scene of the fight. Immediately after the altercation, the defendant told Otero that he would "get Barretto back." They then drove to an apartment building. Otero stayed inside the car while the defendant was inside for five to ten minutes. When the defendant returned, he repeated his warning that he was going to get Barretto. He then drove back to an area near the party, left the car, and disappeared for a short time.

The outside storm door was closed and the inside door was open when the defendant approached the house where the christening party was being held. The homeowner noticed the defendant when he knocked on the glass. The defendant gestured for his former girl friend's seventeen year old son to come outside. When he did, the defendant raised a gun to the boy's head and shot him. The defense maintained at trial that he merely struck the victim in the head and the gun discharged accidentally.

The defendant ran from the scene, tossing the gun away as he fled. Once back inside his car, he told Otero that he "hit somebody and the gun went off," and that he had dropped the gun while running from the scene. The defendant was later found in New York and returned to the Commonwealth.

Counsel was appointed for the defendant on May 22, 1995. A pretrial discovery motion was filed by the Commonwealth on June 26, 1995. The motion was approved, and required both sides, in part, to share statements from all witnesses. The defendant's first counsel withdrew on February 16, 1996, and another attorney, who would represent him at trial, first appeared on his behalf on February 23, 1996. The trial was held five months later, in mid-July, 1996.

2. *The investigative report concerning Otero.* An investigator, hired by the defendant's first attorney, spoke with Otero prior to trial. Apparently, Otero told the investigator that she and the defendant never returned to the scene of the shooting. Prosecutors spoke with Otero and suspected that the investigator had

prepared a report summarizing his interview with her. Months prior to trial, prosecutors asked the defendant's first counsel for a copy of the report, but they did not receive it. Sometime before trial, prosecutors also alerted the judge to their suspicions concerning the report. The judge ordered defense counsel to provide the Commonwealth with a copy of the report prior to trial. Failure to provide a copy of the report would violate the pretrial reciprocal discovery order.

At a sidebar conference on the second day of trial, just before Otero was to testify for the Commonwealth, the judge discussed the elusive report with both sides. Defense counsel explained that he had attempted to get copies of the report from the investigator and from the defendant's first attorney, but the investigator had not responded to his requests. The judge reminded him that the report was due before trial, and that she would issue a court order for the investigator to appear in court if he did not locate a copy that same day. Both sides agreed to proceed with Otero as the next witness, but not to raise the issue of the statement, and, if necessary, to recall Otero to question her about the contents of the report after it was found.

On that same day, the judge warned defense counsel that continued failure to provide the Otero report would result in discovery sanctions. It appears from the record that the report never materialized. Defense counsel announced on the third day of trial that he would not call Otero to the stand.

3. *The investigative report concerning Maldonado.* Max Maldonado was the only witness to the shooting. He testified on the second day of trial, the same day the judge ordered defense counsel to locate the Otero report. He told the jury that he saw the defendant come to the front door, confront the victim outside, raise the gun to the victim's head, and shoot him. Other witnesses placed the defendant at the scene but Maldonado was the only eyewitness.

Moments before he was to begin cross-examination of Maldonado, defense counsel for the first time presented the prosecutor with a copy of a memorandum from the defendant's former counsel, who interviewed Maldonado on November 13, 1995. It read: "Maldonado told us he did not want to testify. He would say that he was so whacked out on alcohol and heroin that night that he doesn't remember anything. He says the police told him what to say the night of the incident."

Defense counsel explained that he had assumed that his

predecessor had complied with the discovery order by providing everything to prosecutors. The Commonwealth argued that they should have received a copy of this report in advance of its use at trial. The judge ordered defense counsel to provide prosecutors with copies of this and any similar materials immediately and to allow the prosecution to question any witnesses involved with any other reports before the witnesses would be permitted to testify. She warned defense counsel that this was his second infraction, and this lack of disclosure could warrant sanctions.

Later, on the fourth and final day of trial, just before he planned to call the investigator to the stand, defense counsel presented prosecutors with a two-page report of the investigator's conversation with Maldonado. The report was a more thorough description of the November 13, 1995, interview than the report revealed two days earlier. According to the report, Maldonado's trial testimony contradicted his interview. He stated that he did not see the defendant on the night of the shooting, he did not witness the shooting, he had consumed alcohol, cocaine, and heroin on the night of the shooting, and he could not remember anything about the night at all. In addition, he claimed to have said "what the police told him happened."

Defense counsel stated he had received this report for the first time that morning from the investigator. As he explained it, he had assumed the defendant's first attorney "had turned everything over to me." He admitted that he "probably [was] more at fault than anybody else with regard to [this]. Probably I should have been more diligent. I just took it at face value that [predecessor counsel] gave me everything that he had. I'm sorry that this has developed."

The judge, faced on the final day of trial with defense counsel's third violation of the pretrial discovery order in three days, precluded defense counsel from questioning the investigator concerning the latest report, and limited his questioning to the contents of the shorter memorandum that previously had been disclosed. In doing so, she explained, and defense counsel agreed, that the report should have been found sooner because defense counsel had been in contact every day with the investigator. The judge stated: "This is the eleventh hour, and this is a clear violation of discovery which warrants sanctions," and "[T]his problem has been a problem from the beginning, and I have made it abundantly clear what your obligation has

been, and I have also ordered you to do certain things that were not done."

4. *Ineffective assistance of counsel.* The defendant argues his trial counsel was ineffective because the attorney's failure to comply with the discovery order led to the preclusion of the investigator's report at trial. He also argues that defense counsel's performance created a substantial likelihood of a miscarriage of justice.

"Because our standard of review under [G. L. c. 278, § 33E], is more favorable to the defendant than is the constitutional standard for determining the ineffectiveness of counsel . . . we consider 'whether there was an error in the course of the trial [by defense counsel] and, if there was, whether that error was likely to have influenced the jury's conclusion.' " *Commonwealth* v. *Mitchell*, 428 Mass. 852, 854 (1999), quoting *Commonwealth* v. *Hardy*, 426 Mass. 725, 730 (1998). See *Commonwealth* v. *Carmona*, 428 Mass. 268, 274 (1998); *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). This requires the defendant to "establish more than mere error or mistake on the part of his counsel." *Commonwealth* v. *Egardo*, 426 Mass. 48, 52 (1997).

The defendant directs his argument against his trial counsel, his second attorney. In reviewing the defendant's claim, we need not assign blame between the two defense counsel. In a case such as this, our proper focus is on the defendant's rights and the prejudice he has suffered from the cumulative effect of the errors of his attorneys. Whether attributable to the loss of evidence, or a poor transition between the attorneys, or an inexplicable inability to discover pertinent evidence, the conduct here must be viewed as the functional equivalent of a single defense counsel who neglected to produce exculpatory evidence and harmed his client by violating a pretrial discovery order.

Defense counsel erred by violating the discovery order, which required both sides to share statements from all witnesses, when he did not disclose the Otero and Maldonado reports. Despite the pretrial discovery order and comments made during trial by the judge, who appeared to have been concerned already by defense counsel's failure to produce the Otero report, trial counsel did not produce his predecessor's memorandum and the investigator's report until the second and fourth days, respectively, of the four-day trial.

Even without the discovery order, defense counsel should

have sought the reports in advance of trial to prepare the best
possible defense. The Commonwealth's case depended on the
testimony of Maldonado, and defense counsel should have zeal-
ously pursued every available avenue to discredit him. Defense
counsel spoke with the investigator every day of trial but neither
disclosed, nor attempted to use, the two-page report until the
last day of trial.[1]

Once we conclude, as we do in regard to the Maldonado
reports, that counsel erred by failing to raise a substantial
defense, "a new trial is called for unless we are substantially
confident that, if the error had not been made, the jury verdict
would have been the same." Commonwealth v. Ruddock, 428
Mass. 288, 292 n.3 (1998). The Commonwealth argues that any
error did not influence the jury's verdict because defense counsel
impeached Maldonado during cross-examination, in which Mal-
donado admitted many of the facts contained in the investiga-
tor's report. In addition, much of his testimony was corroborated
by other witnesses, and the investigator's report was of limited
value to the defendant.

We disagree with the Commonwealth. Preclusion of the Mal-
donado reports prejudiced the defendant. It had a tangible effect
on his defense. The defendant only used the attorney's
memorandum to cross-examine Maldonado. Defense counsel
never used the investigator's report against Maldonado because
Maldonado was dismissed before defense counsel disclosed the
report. In addition, defense counsel was precluded from refer-
ring to the investigator's report when questioning the investiga-
tor. A jury that considered the investigator's report might have
questioned and rejected the trial testimony of Maldonado, the
only eyewitness to the shooting.

Defense counsel's error was compounded by the judge's
reaction to violation of the discovery order. The judge faced a
very difficult situation without an easy remedy. Although she

[1]In regard to the Otero report, trial counsel agreed not to question Otero
about her statements to investigators. The record does not reveal whether the
questioning he waived, or the report itself, would have assisted the defense,
but prior inconsistent statements could have undermined her testimony that
placed the defendant at the scene at the time of the shooting. It is unlikely that
the defendant was denied a substantial ground of defense, however, because
Otero's trial testimony, unlike the statement to the investigator, was consistent
with testimony from other witnesses. Review of counsel's tactics is
complicated, however, because Otero was never recalled to testify, and it ap-
pears that the report was never produced.

should be credited for creative attempts to remedy the violations,[2] other options could have avoided prejudicing either the defendant or the Commonwealth. Most importantly, she should have avoided punishing the defendant for his attorney's errors. There were several options open to the judge. She could have sanctioned defense counsel personally for violating the order, either by using her inherent powers or by referring him to the Board of Bar Overseers. She also could have eliminated prejudice to prosecutors resulting from admission of the newly revealed evidence by granting a continuance to provide them with sufficient time to respond to it.

Having shown a substantial likelihood of a miscarriage of justice, see *Commonwealth* v. *Wright, supra,* the defendant is entitled to a new trial.

5. *Other arguments raised by the defendant.* Because of our disposition of the case, we do not address the defendant's other arguments. In regard to the defendant's claimed loss of his right to present evidence in his own defense, a judge should consider the factors listed in *Commonwealth* v. *Chappee,* 397 Mass. 508, 517 (1986), when deciding whether to preclude evidence as a sanction for a discovery violation. See *Commonwealth* v. *Reynolds, ante* 388, 398 (1999).

6. *Conclusion.* The judgments are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*

---

[2] The judge precluded the investigator's report after responding to defense counsel's other errors with less drastic measures. Concerning the Otero report, the judge proposed having the investigator transmit a facsimile copy to the court. She then offered to use her power to order the investigator into court, and agreed to recall Otero when the report was found. The judge merely warned defense counsel about sanctions when he unexpectedly produced the first attorney's memorandum, and she allowed him to use it to cross-examine Maldonado. Sanctions only resulted after the third infraction, the one relating to the investigator's report on Maldonado. Even then, she permitted defense counsel to question the investigator concerning the substance of the attorney's memorandum. She treated defense counsel generously, especially considering that prosecutors had been precluded from using inculpatory evidence they first revealed to the defendant on the day before trial.