## Commonwealth vs. Charles L. Worcester.

No. 96-P-235.

Suffolk. November 5, 1997. - February 5, 1998.

Present: Warner, C.J., Dreben, & Flannery, JJ.

*Evidence,* Prior consistent statement, Recent invention, Relevancy and materiality. *Practice, Criminal,* Argument by prosecutor, Fair trial.

At a murder trial, the judge correctly admitted evidence of witnesses' prior consistent statements on redirect examination, where the defendant had opened the subject on cross-examination, and in order to rebut an inference of bias. [259-261]

At a murder trial, the judge properly admitted in evidence certain relevant testimony regarding the identification of the victim's body which was not unduly evocative of sympathy or accompanied by any emotional outburst. [261-262]

At a murder trial, the judge correctly allowed the prosecutor to elicit testimony from the defendant on cross-examination concerning drug use at the apartment where the murder had occurred, where such evidence was relevant to negate the defendant's theory of self-defense. [262]

Certain unfortunate comments of the prosecutor in closing argument did not create a substantial risk of a miscarriage of justice. [265]

At a murder trial, the prosecutor's improper appeal to the sympathy of the jury, impermissible use of the criminal records of certain witnesses to impugn the defendant's character, and argument of facts not in evidence cumulatively constituted prejudicial error requiring reversal of the defendant's conviction, where the Commonwealth's evidence of the defendant's guilt was not overwhelming, and where the judge's instructions were not sufficient to remedy the prosecutor's errors. [263-265, 265-268]

Indictment found and returned in the Superior Court Department on March 4, 1993.

The case was tried before *Robert W. Banks,* J.

*John H. Cunha, Jr.,* for the defendant.

*Kelly A. Downes,* Assistant District Attorney, for the Commonwealth.

Dreben, J. At his trial on an indictment for first degree murder

in the stabbing death of Gregory Hairston, the defendant claimed self-defense. The stabbing occurred at an apartment in the Dorchester section of Boston early in the morning of February 23, 1993. The defendant and the victim were both visitors at the apartment and each knew certain of its residents. There was no dispute that earlier in the evening the victim racially disparaged the defendant,[1] spat on him, ordered him to give the victim the defendant's "loot," and threatened him with a knife. The Commonwealth witnesses, the residents of the apartment, claimed that after these incidents, the defendant retreated for a while to a bedroom, but subsequently rushed out ten to twelve feet into the kitchen to the place where the victim was standing and stabbed him with a knife. They also claimed the defendant said, "I told you I was going to get him," and "don't call 911."

Contrary to the account of these witnesses, the defendant testified that, fearful of the victim, he took out his knife to protect himself in case the victim followed him into the bedroom. He took it with him as he left the bedroom in an attempt to leave the apartment. When he opened the curtain that separated the bedroom from the kitchen, the victim was facing him, standing three or four feet away. While he did not see a weapon in the victim's hand, the defendant saw his arm move up. Terrified and feeling threatened, the defendant took a step and stabbed him.

The defendant was convicted of voluntary manslaughter. He appeals, claiming that the judge committed reversible error by admitting irrelevant prejudicial testimony and that the prosecutor's closing argument deprived him of a fair trial. Because of the prosecutor's improper argument, we are constrained to reverse. See generally *Commonwealth* v. *Finstein*, 426 Mass. 200, 205 n.1 (1997) (indicating arguments a prosecutor should avoid). We treat the evidentiary issues, as they may arise on retrial.

1. *Evidentiary matters.* (a) *Prior consistent statements.* A detective who had interviewed the residents of the apartment on the day of the stabbing, and again on the following day, was permitted to testify, over the defendant's objection, that the residents had given the same account the day after the stabbing as they had at trial, namely that the victim had spat in the defendant's face, that the victim had brandished a knife at the

---

[1]The defendant is white; the victim was black.

defendant, and that the victim had directed a racial slur to the defendant. In addition, the detective testified that one of the residents of the apartment, Magda Alemany,[2] had stated in the second police interview, as she had at trial, that she had witnessed the stabbing standing by the doorway in the kitchen next to the washing machine. That statement was inconsistent with her statement taken immediately after the stabbing in which she said that she was in the doorway of her bedroom when she viewed the stabbing which was down the hallway in the kitchen. The earlier statement, the defendant claims, supports his self-defense theory because from that vantage point Magda would only have been able to see the three to four foot area in front of the bedroom where the defendant insists the stabbing took place. Thus, Magda's original account of the place of the incident was consistent with the defendant's testimony and inconsistent with the prosecutor's theory that the defendant had rushed ten to twelve feet into the kitchen. The defendant claims that allowing her second statement to the police to bolster her trial testimony was prejudicial error.

The general rule "is that a witness's prior consistent statement is inadmissible, even where a prior inconsistent statement of the witness has been admitted." *Commonwealth* v. *Zukoski*, 370 Mass. 23, 26 (1976). "The reason for that rule is that evidence that a witness has given an out-of-court account of an event or transaction that contradicts his [or her] in-court testimony fairly warrants an inference that the witness is unreliable, and that inference is not dissipated by the fact that the witness has also given another out-of-court statement that is consistent with his [or her] testimony." *Commonwealth* v. *Brookins*, 416 Mass. 97, 102 (1993).

The Commonwealth argues that the challenged testimony of the detective was admissible because defense counsel opened up the subject of the prior statement and, therefore, it was entitled to elicit the full statements. Moreover, according to the Commonwealth, the testimony falls within an exception to the general rule of exclusion which permits admission of such statements where a claim is made that the witness's in-court testimony is the product of particular inducements or bias or is a recent contrivance. In such event, if the out-of-court statement was made before the witness became subject to the bias or pres-

---

[2]We refer hereafter to Magda Alemany as Magda, not out of disrespect, but because her brother was also a resident of the apartment and a witness at trial.

sure that is claimed to have induced the testimony, it is admissible. See *Commonwealth* v. *Brookins*, 416 Mass. at 102-103; *Commonwealth* v. *Martinez*, 425 Mass. 382, 396 (1997); *Commonwealth* v. *Kindell*, *ante* 200, 203 (1998).

Contrary to the claim of defense counsel at trial that he had only questioned Magda about her conversation with the detective shortly after the stabbing, defense counsel had asked the witnesses, including Magda, about their statements given at various times subsequent to the stabbing and prior to trial. The judge was not in error when he permitted the prior statement, noting that the redirect was "awfully close" to the area of the extensive cross-examination defense counsel had conducted of Magda.

The detective's testimony also fell within the exception cited by the Commonwealth. Defense counsel had elicited testimony from at least three of the residents that they were in default on other criminal matters at the time of the stabbing, and that after their grand jury testimony, they were taken by the police to court, the defaults were removed, and they were released without bail. Thus, although the witnesses were in default at the time of the stabbing, it could be inferred that at a subsequent time prior to their grand jury testimony they sought leniency or were given "particular inducements," see *Commonwealth* v. *Zukoski*, 370 Mass. at 26-27, to give favorable testimony for the Commonwealth. The judge properly instructed the jury that the prior statements were not to be taken for their truth, but only for the fact that the statements were made at a given time. *Id.* at 27.

There was, thus, no error in the admission of the prior statements, all of which, other than Magda's, were corroborated by the defendant's own testimony.

(b) *Testimony of the decedent's brother.* After testifying briefly about the victim's family, the decedent's brother was permitted, over the defendant's objection, to state that his babysitter called him and told him that his brother was deceased. There was no objection to subsequent questions, and the brother testified that, as a result of the telephone call, he and some family members went to Boston City Hospital and identified his brother's body. The decedent was thirty years old.

There was no valid objection[3] to the testimony that the defendant claims was elicited to evoke sympathy, and hence the standard of review is whether there was a substantial risk of a miscarriage of justice. Even had there been a valid objection, the judge did not abuse his discretion in permitting the testimony. The identification was clearly relevant to the Commonwealth's case. Although the defendant was prepared to stipulate to the identity of the deceased, "a judge may admit relevant evidence even if a party has agreed to stipulate to the fact that the offered evidence tends to prove." *Commonwealth* v. *Benoit,* 389 Mass. 411, 425 (1983), quoting from *Commonwealth* v. *Bastarache,* 382 Mass. 86, 106 (1980). As in that case, the testimony was short — the entire examination and cross-examination of the witness consisted of only five pages — was not unduly evocative of sympathy, and there was no emotional outburst. Compare *Commonwealth* v. *Santiago,* 425 Mass. 491, 497 (1997).

(c) *Evidence as to drug use.* The prosecutor was permitted, over defense objection, to elicit testimony from the defendant that, prior to the evening of the stabbing, he had seen a crack pipe and had seen three of the apartment residents smoke crack cocaine there. This testimony was elicited after the defendant had testified, on direct examination, to the victim's smoking and use of a crack pipe on the evening of the stabbing. From the context of the defendant's direct examination, the jury could have inferred that the victim's use of crack cocaine contributed to the defendant's fear of the victim, thereby supporting the defendant's theory of self-defense. The testimony that the defendant had seen a crack pipe before and had seen his friends smoke crack cocaine (and hence seen them under the influence of crack cocaine) tended to negate the inference that the victim's use of the drug caused him to be fearful.

The prosecutor did not ask the defendant whether he had ever used crack cocaine himself, nor did he suggest that he did so in his questioning. In any event, as discussed above, the evidence was relevant for other purposes; thus, even if, as the defendant contends, it suggested a prior bad act on the defendant's part, it was admissible.

---

[3]The defendant's motion in limine to exclude the brother's testimony had been denied. Such a motion is insufficient to preserve appellate rights in the absence of an objection at trial. *Commonwealth* v. *Keniston,* 423 Mass. 304, 308 (1996).

2. *Prosecutor's closing.* The defendant claims he was denied a fair trial by statements made in closing argument by the Commonwealth. At the close of the prosecutor's remarks, the defendant objected, inter alia, to the prosecutor's appeal to the jury's sympathy and to his use of the criminal histories of the residents to impugn the defendant's character. On appeal, the defendant claims additional missteps. We shall first examine the prosecutor's comments meriting discussion and challenged by the defendant and then shall consider their prejudicial impact, if any.

(a) *Appeal to sympathy of jury.* The defendant claims that the following remarks of the prosecutor improperly called upon sympathy for the victim.

> "But just because Gregory Hairston was not a likeable guy on February 23, 1993, doesn't make him any less of a victim, doesn't make his life any less worthy than any of ours.

> "See when you take a knife and you stick it into the gut of Gregory Hairston, he bleeds just like any of us in this courtroom. When you take a knife and you stick it into Gregory Hairston, he is in just as much pain as any of us would be, and when a young guy like Gregory Hairston, thirty years old from Boston, dies, is killed, his family, his friends, grieve as much as any of ours would . . . .

> "Mr. Worcester decided to put a value on Mr. Hairston's life and he deemed Mr. Hairston's life worthless. None of us are in a position to deem anyone's life worthless. No one here in this courtroom, and particularly the likes of Worcester, is in a position to put a value on a person's life . . . .

> "But you keep on hearing all this dirt about Hairston. It's piled on time and time again about what a terrible person he was . . . . Hairston is not on trial.

> "Well, Greg Hairston's life meant something. Greg Hairston had a right to life . . . . He is in no position to deem Gregory Hairston's life worthless . . . .

> "On February 23, 1993, the defendant, Charles Worces-

ter, took a knife, ran across the kitchen floor, stuck it into the belly of an unarmed man because he wanted revenge. He did it.

"I'm asking you respectfully to do something about it. Thank you."

The remarks were improper. See *Commonwealth* v. *Barros,* 425 Mass. 572, 581 (1997). The focus on the right of the victim to live and the pain he and his family suffered as well as the repeated claim that the defendant had determined that the victim's life was of no value were irrelevant to the issues in the case. Rather than tending to prove the crime charged, such comment unfairly invited the jury to be influenced in arriving at their verdict by sympathy for the victim. See *Commonwealth* v. *Drumgold,* 423 Mass. 230, 252-253 (1996).

It was also improper for the prosecutor to ask the jury to do something about the killing.[4] Their function is to weigh impartially the facts, not to "do something about" the killing, or vindicate the victim. Cf. *Commonwealth* v. *Ward,* 28 Mass. App. Ct. 292, 294 (1990).

(b) *Impugning character of the defendant.* The defendant also objected to the prosecutor's use of the criminal records of the apartment residents to impugn Worcester's character. The prosecutor argued, speaking of the four apartment residents:

"I can't go out and find names and order me up four great witnesses with impeccable credentials and impeccable backgrounds. Who do you think is hanging around [at the apartment] at two o'clock in the morning? [Names the four] and don't forget him [pointing at the defendant].

"Let's don't underestimate the obvious here. These are his pals. He's there at two o'clock in the morning. He has got everything in common with these people. Don't underestimate the obvious, ladies and gentlemen. He's the one with the bag full of liquor, socializing all night long, according to him, at a crack house. Everybody has got criminal records. These are his pals. These are his friends. Don't underestimate the obvious here."

---

[4]Although he challenges this exhortation on appeal, the defendant did not object to this remark at trial, but did object to the prosecutor's comment that, "You will not be the first jury to convict someone. You certainly will not be the last."

These remarks were also improper. To imply that Worcester, like his pals, was a drug abusing criminal presented the defendant in a demeaning light, had no relevance to the charge against him, and was an impermissible attack on the defendant's character. See *Commonwealth* v. *Harris*, 409 Mass. 461, 469 (1991). The comments are particularly troublesome as there was no evidence that Worcester had a criminal record, that he used drugs, or that he testified that the apartment was a crack house. See *Commonwealth* v. *DeMars*, 42 Mass. App. Ct. 788, 790 (1997), *S.C.*, 426 Mass. 1008 (1998).

(c) *Comments unchallenged in the trial court.* Other comments of the prosecutor were also unfortunate, and are complained of on appeal although they were not objected to at trial. The standard of review on these issues is whether the comments created a substantial risk of a miscarriage of justice. We conclude the unobjected to remarks did not. At one point the prosecutor stated:

> "Mr. Cunha [defense counsel] is right. The credibility of the witnesses is very important in this case. Now he uses the term government witnesses. Well I'm the government . . . . I called the four people that were in that apartment . . . . Are they biased towards me? Boy did I get short-changed up there . . . ."

On appeal, defense counsel argues that the prosecutor personalized his role and his case by arguing that he, as the government, was to be believed and that he wished he had better witnesses to testify to the truth. While in context the comment was not a personal belief, equating himself with the government was regrettable. The defendant's claim that the prosecutor attacked the integrity and role of defense counsel is exaggerated as are his contentions that the prosecutor introduced race into the case and misstated in a prejudicial manner the Commonwealth's burden of proof.

3. *Prejudice to the defendant.* As recently stated in *Commonwealth* v. *Santiago*, 425 Mass. at 500,

> "The standard for determining whether a conviction must be reversed is whether the improper statements made by the prosecutor 'constituted prejudicial error.' . . . The cumulative effect of all the errors in the context of the entire arguments and the case as a whole is considered in

making this determination. . . . The following factors are considered: whether defense counsel seasonably objected to the arguments at trial . . . whether the judge's instructions mitigated the error, whether the errors in the arguments went to the heart of the issues at trial or concerned collateral matters . . . whether the jury would be able to sort out the excessive claims made by the prosecutor, and whether the Commonwealth's case was so overwhelming that the errors did not prejudice the defendant . . ." (Internal citations omitted.)

Here, as indicated, the defendant seasonably objected to the prosecutor's attack on the defendant's character and his appeal to sympathy for the victim.

The judge, in his charge, did not specifically address the prosecutor's appeal to sympathy. He instructed them, however, that:

> "it is your duty to determine the facts without prejudice, without fear, without favor, and solely from a fair consideration of the material in the form of evidence that was submitted to you during the course of the trial. . . . [Y]ou cannot allow yourself to be influenced by any extraneous factors such as the climate of the times . . . . If there are social problems that might engulf all of us at one time or another . . . put those factors out of your mind . . . . [I]solate your minds from everything else, concentrate on what occurred in the last two or three days and decide this case only on this evidence and this law that I give you."

The judge also emphasized that what counsel stated in their openings and closings was not evidence. Without specifically mentioning sympathy, and without correcting the implication that the defendant had a criminal record, and that in any event his character was not an issue, the instructions were not enough to remedy fully the prosecutor's errors. See *Santiago, supra* at 501.

There was no question that a stabbing had occurred and that the defendant had been the stabber. The issue before the jury was whether the killing was intentional, as indicated by the Commonwealth's witnesses, or whether, as contended by the defendant, it was in self-defense. The credibility of the wit-

nesses was crucial as acknowledged by the prosecutor. There was no physical evidence supporting either the Commonwealth's version or the defendant's — all depended on whom the jury believed. Also, as acknowledged by the prosecutor, the location of the stabbing was significant. Magda's trial testimony was impeached by her original discussion with the police which corroborated the defendant's claim that the stabbing occurred outside the curtain to the bedroom door, as that was the only part of the kitchen Magda could see from her bedroom door. The only other resident who claimed to have seen the stabbing, Trena Melton, thought that only she and the victim were in the room prior to the stabbing. She also acknowledged that the victim put up his hands when he saw the defendant but she didn't know whether that was before or after the stabbing. The victim's knife was seen on the floor soon after the incident.

While there was substantial evidence to suggest that the defendant intentionally attacked the victim, including the recitation of statements made by him as testified to by the apartment residents, the evidence was not overwhelming. The defendant's statements, too, depended entirely on credibility. There was also indication that some of these recitations only surfaced at the grand jury stage and not when the witnesses were first interviewed by the police.

In these circumstances, the citation to the criminal records of the apartment residents in connection with the statement that the defendant had everything in common with them, that he socialized all night with them at what was "according to him" a crack house (a complete misstatement of his testimony) demeaned the defendant and may have led the jury to consider him not only not credible but a bad man who determined that the victim's life was worthless and was likely to have killed in order to vindicate his own pride. The prosecutor's comments did not relate to a collateral matter but went to the crucial issue of credibility.

In addition, as we indicated earlier, the prosecutor's appeal to sympathy was improper. While such an appeal does not speak directly to the issue before the jury, "that is the nature of appeals to sympathy: They do not misstate any piece of evidence, but rather obscure the clarity with which the jury would look at the evidence and encourage the jury to find guilt even if the evidence does not reach the level of proof beyond a reasonable doubt." *Santiago, supra* at 501. The additional exhortation to

"do something about the killing" compounded the troublesome nature of the prosecutor's emotional appeal.

An examination of the record as a whole, the closing arguments in their entirety, and the judge's charge leads us to conclude that it is at least possible that the prosecutor's invocation of sympathy, his misuse of the criminal records of the witnesses to taint the defendant's character, and his reliance on matters not in evidence were errors that "possibly [made] a difference in the jury's conclusions." *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987). See *Commonwealth* v. *Santiago*, 425 Mass. at 501-503. Accordingly, the judgment is reversed, and the verdict is set aside. Compare *Commonwealth* v. *Gordon*, 422 Mass. 816, 830-831 (1996); *Commonwealth* v. *Barros*, 425 Mass. at 582.

*So ordered.*