## COMMONWEALTH *vs.* LEE ANDREW BURNS.

No. 98-P-320.

Suffolk. September 21, 1999. - July 13, 2000.

Present: ARMSTRONG, C.J., GILLERMAN, & PORADA, JJ.

*Practice, Criminal,* Argument by prosecutor, Instructions to jury. *Evidence,* Motive.

At a murder trial, the prosecutor's improper appeal to the sympathies of the jury did not create a substantial risk of a miscarriage of justice, in light of the strong evidence of the defendant's guilt and the judge's instructions to the jury. [680-683]

At a murder trial, the prosecutor's misstatement of the evidence did not create a substantial risk of a miscarriage of justice, in light of the entire argument, the judge's instructions to the jury, and the evidence against the defendant. [683]

At a murder trial, the prosecutor properly argued the inference from the evidence that the defendant had fled after the victim had been shot. [683-684]

At a murder trial, the prosecutor's argument, that innocent men do not lie or use false addresses but guilty men do, did not amount to an expression of a personal opinion as to the defendant's guilt and, in any event, did not create a substantial risk of a miscarriage of justice. [684]

At a murder trial, the judge properly admitted evidence of a shooting about three years prior that demonstrated the continuing animosity between two neighborhood groups relevant to the motive in the killing for which the defendant was being tried. [684-685]

At a murder trial, the judge was not required to instruct on mistaken identification, where the defendant did not argue that theory of defense and where, in any event, the evidence did not warrant the instruction. [685]

There was no merit to a criminal defendant's claim that the judge coerced the jury to reach a verdict. [685-686]

INDICTMENTS found and returned in the Superior Court Department on October 19, 1995.

The cases were tried before *Robert W. Banks,* J.

*Daniel J. Johnedis* for the defendant.

*Joseph M. Makalusky,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, C.J. Appealing from his December, 1996, second degree murder conviction and his conviction for unlawful possession of a firearm, the defendant, Lee Andrew Burns, challenges the prosecutor's closing argument, the admission of evidence of an unrelated shooting as bearing on his motive, and the jury instructions.

Jamiyl Gross, the Commonwealth's key witness at trial, testified that on January 4, 1995, around 3:30 P.M., he and the victim, fifteen year old Ronell Adams, decided to walk to the home of Chris Dunston, Adams's half-brother. Dunston lived in the Warren Gardens area of the Roxbury section of Boston, the neighborhood lived in and frequented by the defendant and his group of friends. Gross lived in the St. Joseph's neighborhood of Roxbury, and Adams lived in the Dorchester section of Boston. During their walk, they saw the defendant and several of his friends standing some distance away. Gross testified that he often saw this group congregate in Warren Gardens and that he did not "get along" with them.

Gross and Adams were met by Dunston's mother, who informed them that Dunston was not at home. She testified that Adams seemed nervous when he came to her door. Gross and Adams left, taking a different route home to avoid the defendant and his group, which included (according to Gross) Roland Worrell, Wayne Hogan,[1] and Richard Ashby. Gross had known the group for years.

Gross testified that, as they began to walk, he saw the defendant up on a hill, approximately twenty feet away, aiming a silver revolver directly at them and shooting. Nothing, according to Gross, obstructed his view. He heard five or six shots.

Adams was struck by a bullet in the back. Gross initially tried to drag Adams to safety but fled when unsuccessful.[2] Gross contacted police on January 15, 1995, eleven days after the shooting, and identified the defendant from a photo array. At trial Gross again identified the defendant as the shooter.

On cross-examination the defendant challenged Gross's credibility. He elicited a seven year old incident in which Gross had given a false name and address to the police. He also brought out several inconsistencies in Gross's version of events. For

---

[1]*Gross had omitted Hogan in his statement to police. Evidence at trial showed that Hogan was incarcerated on the day of the murder.*

[2]Paramedics found an unloaded gun in Adams's jacket. Gross testified that Adams did not draw the weapon on the day of the shooting.

example, Gross had told police that he saw three men on the hill but testified at trial that there were five or six. He admitted that he had lied to police when he told them that he had previously seen the defendant's gun. He acknowledged various criminal proceedings against him.[3] He further admitted that in December, 1994, and January, 1995, he and the defendant had a dispute concerning their respective girlfriends.

The defendant also challenged the believability of Gross's identification of the defendant by eliciting from Detective Paul Barnicle that a bus driver had given the police a description of the shooter that differed markedly from the defendant. The bus driver had observed the shooter from 200 feet away and across three lanes of traffic, and did not pick out the defendant's photograph from an array.

Other testimony at trial tended in significant respects to corroborate Gross's story. See note 7, *infra.* Moreover, while the defendant had been a fixture in Warren Gardens until the day of the shooting, he was not seen there after the shooting. Police visits to his home were unfruitful. In October, 1995, the defendant was arrested in Buffalo, New York, using a student identification card with a false name. When confronted by police, he gave a false name and a false address.

1. *The prosecutor's closing argument.* The defendant urges this court to reverse his conviction on the grounds that in his closing argument the prosecutor excessively played on the jury's sympathy, misstated the evidence, and rendered his personal opinion as to the defendant's guilt.[4] We consider the challenged comments in light of the entire argument, the judge's instructions, and the evidence at trial.[5] *Commonwealth* v. *Pearce*, 427 Mass. 642, 643-644 (1998). *Commonwealth* v. *Johnson*, 429

---

[3]Gross admitted on cross-examination that he had been facing an upcoming court date on January 23, 1995, on a charge of armed assault with a dangerous weapon. He received a suspended sentence on that charge and was placed on probation. In addition, from August, 1995, until February, 1996, Gross had a probation surrender hearing pending in Roxbury District Court. After testifying before the grand jury in the present matter, his case in Roxbury was dismissed.

[4]Appellate counsel was not the trial prosecutor.

[5]The relevant factors considered in measuring the cumulative effect of all the errors in context of the entire argument and the case as a whole are whether the defendant objected at trial, whether the judge's instructions had any curative impact, whether the errors went to the heart of the case, whether the jury could sort out the excessive claims by the Commonwealth, and the

Mass. 745, 749 (1999). So viewed, the judge's instructions to the jury adequately counteracted any improprieties in the prosecutor's closing argument. The defendant was not prejudiced.

a. *Improper appeal to sympathy.* Because the defendant did not object at trial to the prosecutor's closing remarks on grounds of an excessive appeal to sympathy, "our review is limited to determining whether there has been a substantial likelihood of a miscarriage of justice." *Commonwealth* v. *Johnson,* 429 Mass. at 747, quoting from *Commonwealth* v. *Lyons,* 426 Mass. 466, 471 (1998).

The Commonwealth concedes, and we agree, that the prosecutor crossed the line of proper argument when, at the beginning of his oration, he launched into a plea for sympathy:

> "[H]e was a scared, skinny, fifteen year old kid running for his life. Envision that scene. Running for his life as this man stood on a hill with a pistol and started shooting at these two. Sometimes we can lose sight of that. . . . [S]ometimes you can lose sight of that fact, that a fifteen year old young man is dead because of Burns.

> "Ronell Adams's life means as much as mine, yours, respectfully, the judge or anyone in this courtroom . . . . His life counts as much as anyone's, is as valuable as anyone's. Ronell Adams was fifteen years old. He's dead and buried because of him. Ronell Adams, fifteen years old, no longer exists. He's not coming home to his mother. He's not going to walk through this door right now. He's dead and buried. Fifteen years old. I want you to reflect on that for a minute how young that is. He's just a kid, he's a baby.

> "[T]he priority in his life should be making the varsity teams, having a good time for himself. Instead, he's dead and buried because of him. And we can lose sight of that if we keep on pointing fingers at him and Gross."

Toward the end of his argument the prosecutor renewed the theme:

> "[A] fifteen-year-old kid, running for his life . . . .

strength of the Commonwealth's case. *Commonwealth* v. *Santiago,* 425 Mass. 491, 500 (1997). *Commonwealth* v. *Pearce,* 427 Mass. 642, 643-644 (1998).

How do you portray that scene? The panic in his mind as he rounds that corner and a bullet enters his back and goes through his chest and destroys everything in the middle. Destroys his heart. That's the brutal reality of murder. Stumbling up the sidewalk and dropping dead, as he turns around and flees and jets off to New York later on."

He then said, "I'm asking each and every one of you to do something about it. I'm asking you to convict him."

The prosecutor's remarks bear a close resemblance to those held improper in *Commonwealth* v. *Santiago*, 425 Mass. 491, 494 (1997).[6] In *Santiago*, the defendant objected, the evidence was far from overwhelming, and the judge never told the jury to disregard sympathy in their deliberations and did not correct a prejudicial misstatement of evidence. *Id.* at 500-503.

The defendant also relies upon *Commonwealth* v. *Worcester*, 44 Mass. App. Ct. 258, 266-268 (1998). In that case, the prosecutor not only improperly appealed to sympathy and stated to the jury, "I'm asking you respectfully to do something about it," *id.* at 264, but also impugned the defendant's character by suggesting that the defendant used drugs and had a criminal record simply because there was evidence that his friends did. *Id.* at 263-265. Because the case turned on the defendant's credibility, and the evidence was not overwhelming, we reversed. *Id.* at 267-268.

Circumstances are materially different in the present case. The defendant did not object at trial to the prosecutor's opening statement or closing argument, which is "some indication that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not [in the context of the trial deemed] unfairly prejudicial." *Commonwealth* v. *Lyons*, 426 Mass. at 471, quoting from *Commonwealth* v. *Mello*, 420 Mass. 375, 380 (1995). Indeed, the absence of an objection could derive from the fact that the greater part of the prosecutor's closing argument focused upon the evidence in this case; his pleas for sympathy did not suffuse the entire argument. See *Commonwealth* v. *Mitchell*, 428 Mass. 852, 857 (1999). Contrast *Commonwealth* v. *Griffith*, 45 Mass. App. Ct. 784, 789 (1998)

---

[6]Also clearly wrong was the repeated return to the victim's young age, see *Commonwealth* v. *Kent K.*, 427 Mass. 754, 761 (1998), and the exhortation to the jury to "do something about it." See *Commonwealth* v. *Worcester*, 44 Mass. App. 258, 264 (1998).

(conviction reversed where unwarranted characterization of defendant as drug dealer saturated entire case from beginning to end).

Although the Commonwealth's case turned heavily on Gross's testimony, testimony by other witnesses corroborated details of his story,[7] and, as mentioned earlier, there was strong evidence of the defendant's consciousness of guilt, namely, his disappearance after the shooting and his turning up living in New York under an assumed name with a false student identification card. When confronted by police, he gave a false name and nonexistent address.

Furthermore, the judge specifically instructed the jury to disregard sympathy[8] and that closing arguments are not evidence in the case. See *Commonwealth* v. *Mitchell*, 428 Mass. at 857-858. The jury's adherence to these instructions and their disregard of the prosecutor's appeal to sympathy are evident from the jury's requests that the judge again instruct on reasonable doubt and on the distinction between first and second degree murder. See *Commonwealth* v. *Cowels*, 425 Mass. 279, 287-288 (1997) (new trial not required where, although defendant objected at trial, judge told jury to disregard sympathy and jury questions evinced focus on key issues); *Commonwealth* v. *Depradine*, 42 Mass. App. Ct. 401, 409 (1997) (motion for mistrial properly denied where jury instructions and jury's focus on pertinent issues negated claim of prejudice).

Although the prosecutor exceeded the bounds of permissible argument, given the lack of an objection by the defendant, the strong evidence of guilt, the judge's very specific instructions to

---

[7]For example, Gross reported that the defendant fired repeatedly with a revolver; a revolver does not eject shell casings, and no shell casings were recovered from the scene. Herbert Callwood testified that, while he was working in an apartment in Warren Gardens at the time of the shooting, he heard a group of youths walk by and a person say, "Eight Dabney," which is where Roland Worrell lived. Marjorie Johnson, who worked across the street from the site of the shooting, testified that she heard shots and then saw Gross trying to lift or carry Adams. The medical examiner testified that Adams's wounds were consistent with having been fired upon while in a crouching position as testified to by Gross.

[8]The judge instructed, "It's your duty to determine facts without prejudice, without fear, without favor, without sympathy. You put aside all of those factors and you be very clinical about what you do, very objective. Put yourself above any feelings of sympathy or emotion. You must be very analytical, objective, focused, and decide this case on the facts as you determine them to be, applying this law I give you to those facts."

the jury, and the jury's focus upon the primary issues in the case, we conclude that his excesses did not create a substantial risk of a miscarriage of justice. Compare *Commonwealth* v. *Barros*, 425 Mass. 572, 582 (1997) (conviction affirmed where, although defendant objected, evidence was strong, judge told jury that closings are not evidence, and prosecutor asked jury to not decide case based on sympathy).

b. *Prosecutor's misstatement of evidence.*

i. *Testimony of Roland Worrell.* In his closing, the prosecutor incorrectly argued that Roland Worrell, a friend of the defendant, testified at trial that he had seen the defendant in Warren Gardens on the day of the shooting. Worrell *had* so testified before the grand jury, but at trial he testified to the contrary, and then had been impeached with his grand jury testimony. The prosecutor's substantive use of Worrell's grand jury testimony was improper. See *Commonwealth* v. *Rosa*, 412 Mass. 147, 156 (1992).

After the argument, the defendant objected. The judge indicated he would tell the jury that their memories of the evidence controlled. This he did. The defendant did not lodge a further objection. In these circumstances, we review the remark in light of the entire argument, the judge's instructions, and the evidence, looking for a substantial risk of a miscarriage of justice.[9] *Commonwealth* v. *Galvin*, 27 Mass. App. Ct. 150, 154 (1989). See *Commonwealth* v. *Delaney*, 425 Mass. 587, 601 & n.16 (1997), cert. denied, 118 S. Ct. 714 (1998). We find no such risk in this isolated reference.

ii. *The defendant's flight to New York.* The prosecutor did not exceed the evidence in arguing that the defendant fled to New York the day of the shooting. The evidence at trial established that the defendant was seen on a daily basis in Warren Gardens and that he was not seen after the shooting. Given the defendant's arrest over nine months later in New York and his use of a false name and identification card, the prosecutor could properly argue the inference that the defendant had fled to New York shortly after the shooting. See *Commonwealth* v. *Andrews*,

---

[9]Relying on *Commonwealth* v. *Vinnie*, 428 Mass. 161, 172 & n.14, cert. denied, 525 U.S. 1007 (1998), the defendant urges this court to review the remarks under a more favorable standard because he asserts that any further objection would have been futile. In *Commonwealth* v. *Vinnie*, however, defense counsel had repeatedly and vigorously objected to no avail; here, defense counsel did not press for any further instructions.

427 Mass. 434, 443-444 (1998) (prosecutor could reasonably argue that defendant's disappearance from place which he regularly frequented during weeks prior to murder manifested consciousness of guilt).

c. *Prosecutor's personal opinion as to defendant's guilt.* In his closing, the prosecutor several times argued that innocent men do not lie or use false addresses but that guilty men do. Although he did not object at trial, the defendant now equates these statements to a personal opinion as to the defendant's guilt. We do not so construe them. In any event, they did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Cowels,* 425 Mass. at 288 n.9.

2. *Admission of motive evidence.* Over the defendant's objection, the judge admitted evidence that in 1992 Karee Lewis shot Roland Worrell and Rodney Ashby, friends of the defendant who were seen with him prior to the shooting, and two other individuals, one of whom died. There was no evidence that Gross, the victim, or the defendant were present at this incident. However, Gross testified that he was friends with Karee Lewis, who was also from the St. Joseph's neighborhood, and that he (Gross) did not like and did not get along with a group of young men from Warren Gardens, comprised of the defendant and his friends. The judge instructed the jury that the evidence of the 1992 shooting was admitted only to show motive, which we take to refer to the standing hostility between the two groups.

Testimony bearing on motive is admissible in evidence, of course. See *Commonwealth* v. *Weichell,* 390 Mass. 62, 73 (1983), cert. denied, 465 U.S. 1032 (1984); *Commonwealth* v. *Ashley,* 427 Mass. 620, 624-625 (1998). "Determination of the weight of such evidence is for the jury, and evidence which merely suggests rather than 'clearly shows' a motive for the crime may still be ruled admissible. There is no requirement that evidence [of motive] be conclusive in order to be admissible." *Commonwealth* v. *Ashley, supra,* quoting from *Commonwealth* v. *St. Germain,* 381 Mass. 256, 271 (1980). The question presented is whether the trial judge abused his discretion in ruling that the probative value of the motive evidence outweighed its prejudicial effect. *Commonwealth* v. *Maldonado,* 429 Mass. 502, 504 (1999). See *Commonwealth* v. *Jacobson,* 19 Mass. App. Ct. 666, 678 (1985). The judge could reasonably conclude that Gross's testimony concerning the continuing animosity between himself and the young men who frequented

Warren Gardens and his and the victim's anxiety upon encountering this group on the day of the incident rendered the evidence of the 1992 incident relevant.[10] See *Commonwealth* v. *Gil*, 393 Mass. 204, 215-216 (1984). See generally *Commonwealth* v. *Wilson*, 427 Mass. 336, 349 (1998).

3. *Jury instructions.*

a. *Instruction on mistaken identification.* Although at trial the defendant did not request a mistaken identification instruction, he now urges this court to find that the absence of such an instruction created a substantial risk of a miscarriage of justice. A judge is compelled to give such an instruction when requested by the defendant and warranted by the facts. *Commonwealth* v. *Rosado*, 428 Mass. 76, 78 (1998), quoting from *Commonwealth* v. *Pressley*, 390 Mass. 617, 620 (1983).

Here, it is manifest from his cross-examination of Gross and his opening and closing remarks that the defendant pursued a theory that Gross was biased and lied when he testified that the defendant was the shooter. Contrast *Commonwealth* v. *Odware*, 429 Mass. 231, 237 (1999) (defendant argued mistaken identification in opening and closing and requested instruction). The defendant clearly eschewed a mistaken identification theory.

Furthermore, the evidence did not warrant such an instruction. The shooting occurred during daylight hours, Gross had known the defendant for several years, and Gross testified that the shooter stood only twenty feet away. See *Commonwealth* v. *Stoddard*, 38 Mass. App. Ct. 45, 48 (1995) (instruction not required where victim had known defendant for over one year, was within several feet of the perpetrator, never recanted the identification, and defendant never offered alibi); *Commonwealth* v. *Grace*, 43 Mass. App. Ct. 905, 906-907 (1997) (instruction not required where witness observed defendant clearly from 100 feet away during daylight hours, view was unobstructed, and witness knew defendant).

b. *Unanimity instruction.* The defendant's assertion that the judge coerced the jury to reach a verdict by instructing the jury that their verdict must be unanimous and by failing to instruct

---

[10]We note that the jury was not instructed on the doctrine of transferred intent; however, the jury could have inferred that the defendant bore ill will toward the victim on the basis of his friendship with Gross, or the second degree murder verdict could be interpreted as indicating that the jury concluded that the defendant was aiming at Gross and that Adams was an unintended victim.

the jurors to vote according to their own consciences is without merit. The judge specifically told the jury, "You need not . . . surrender your convictions," which is virtually identical to instructions approved of in *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 102-103 (1973). Cases concerning instructions to deadlocked juries are not on point.

4. *Conclusion.* We have considered all the arguments, and we have found no error by the judge that presents a serious obstacle to affirming the judgment. We must register our dismay, however, that what would otherwise have been an essentially error-free trial was significantly complicated by the prosecutor's resort to passion in beginning and ending his closing argument, a resort that came perilously close to requiring a retrial. Especially dismaying is that the histrionics seem to have been studied, not careless: the prosecutor in effect created an issue for appeal.

We write this postlude to caution offending prosecutors again to the needless risk of reversal that they run in transgressing the well-defined boundaries of relevance in argument, see *Commonwealth* v. *McLeod,* 30 Mass. App. Ct. 536, 537-539 (1991), and cases cited — needless, because inflamed oratory is probably of little pedagogical value in a court, where passion is more likely to be stirred by understatement than by overemphasis and exaggeration. We admonish such prosecutors to show more faith in the intelligence of jurors, who can be trusted to empathize with victims and to understand that criminals should be punished without having those simple ideas belabored. A trail of unnecessarily vulnerable convictions does little to enhance a prosecutor's reputation for professionalism.

*Judgments affirmed.*