COMMONWEALTH vs. KAIRI THOMAS.

Suffolk. March 7, 2003. - May 13, 2003.

Present: MARSHALL, C.J., SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Evidence,* Impeachment of credibility, Relevancy and materiality, Credibility of witness, Motive, Bias, Scientific test, Failure to produce witness, Alibi, Corroborative evidence, Immunized witness. *Practice, Criminal,* Instructions to jury, Conviction, Reasonable doubt, Capital case. *Witness,* Credibility, Bias, Corroboration, Immunity.

At a murder trial, the judge did not err by refusing to admit in evidence certified copies of three convictions used to impeach a prosecution witness, where the impeachment was complete on reading the records and establishing that the witness was the subject of them; further, the judge did not err by failing to instruct the jury that the witness's convictions were relevant to the question of her credibility, where the jury would have understood this through the application of common sense and experience. [364-365]

At a murder trial, the judge's general instruction to the jury concerning the credibility of witnesses, viewed in its entirety, was not biased in favor of the prosecution, nor did it include the judge's personal opinions about the characteristics of a truthful witness that amounted to expert opinion testimony, nor did it impermissibly shift the burden of proof. [365-367]

At a murder trial, there was no error in the judge's instruction to the jury on the guilt of others, which the defendant contended removed the central issue in the case (the credibility of a certain prosecution witness) from the jury's consideration. [368-369]

At a murder trial, the judge did not err in refusing to supplement his instruction to the jury on reasonable doubt that used the language of *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850), where the *Webster* charge as a whole adequately defined reasonable doubt, and the requested additional language was not required. [369]

At a murder trial, there was no error in the judge's instructions to the jury on the failure of the Commonwealth to conduct scientific tests [369-370], on missing witnesses [370-371], or on alibi [371].

This court declined the invitation of a criminal defendant to require, as a matter of common law or constitutional law, that the testimony of an informally immunized witness must be corroborated before a defendant may be convicted. [371-372]

At a murder trial, the judge's instruction to the jury with regard to uncorroborated testimony of an immunized witness adequately protected the defendant's right to a fair trial, where the judge not only instructed the jury to scrutinize the testimony of accomplices with great care, but he also told the jury that the Commonwealth, under its nonprosecution agreement, had

no means of knowing if its prosecution witness was testifying truthfully. [372-373]


INDICTMENT found and returned in the Superior Court Department on March 5, 1999.

The case was tried before *Charles T. Spurlock*, J.

*Ruth Greenberg* (*Anne Gowen* with her) for the defendant.

*Paul B. Linn*, Assistant District Attorney, for the Commonwealth.

SPINA, J. The defendant, Kairi Thomas, was convicted of murder in the first degree on theories of deliberate premeditation and extreme atrocity or cruelty. On appeal he asserts error in (1) the trial judge's refusal to admit certified copies of convictions of a Commonwealth witness; (2) various aspects of the judge's instructions on (a) credibility, (b) evidence, and (c) reasonable doubt; and (3) the judge's failure to instruct on (a) the Commonwealth's failure to conduct certain tests, (b) missing witnesses, and (c) alibi. The defendant also asks us to revisit the rule that the testimony of an informally immunized witness does not require corroboration. We affirm the conviction and decline to exercise our power under G. L. c. 278, § 33E, to reduce the conviction or to order a new trial.

1. *Facts.* The jury could have found the following facts. Corina Weatherford, the defendant's girl friend, went to bed at approximately 1 A.M. on December 10, 1996. She could see the defendant, Yancy Waters, and Kevin Shaw, the victim, in the living room of an apartment in the Roxbury section of Boston the four of them shared with two others. She could also see the defendant and Waters snorting cocaine.

Weatherford awoke to the sounds of loud music and voices. She saw the defendant and Waters standing over Shaw, who was lying motionless on the living room floor, his head covered with blood. The defendant was repeatedly striking Shaw's head with a bat-like object. The defendant told her they killed Shaw because of an obscene remark he had made to Weatherford the night before. The defendant and Waters wrapped Shaw's body in the living room rug, secured the rug with duct tape, and put it in the cellar.

On the evening of December 10, 1996, Weatherford, Waters, and Waters's father, who also lived in the apartment, took the rug containing Shaw's body to a parking lot in Roxbury. The defendant was unable to participate in the disposal of the body because he had been arrested on outstanding warrants following a routine motor vehicle stop at 11:20 P.M. on December 10, but he directed the operation by telephone from the police station where he was being held. The body was discovered by police at approximately 2:30 A.M. on December 11, still in a state of rigor mortis.[1]

Police were unable to obtain any details surrounding Shaw's death until nearly two years later, in October, 1998, when a coworker of Weatherford gave police details about the murder that Weatherford had disclosed to her. The police interviewed Weatherford in November, 1998, but at that time she denied having any knowledge of Shaw's murder. When interviewed again in January, 1999, she told police what she knew. Weatherford testified at trial pursuant to a written nonprosecution agreement conditioned on the absence of evidence that she participated in the killing, as well as her truthful testimony. She gave the only eyewitness testimony about the murder.

2. *Exclusion of certified copies of convictions.* The defendant argues that the judge erred by refusing to admit certified copies of three convictions used to impeach Weatherford. There was no error. "The impeachment was complete on reading the records and establishing that the witness was the subject of them. . . . The judge was not obliged to admit the records as exhibits, though he could have chosen to do so" (citation omitted). *Commonwealth v. St. Pierre*, 377 Mass. 650, 664 (1979).

The defendant also argues that the judge erred by failing to instruct the jury that Weatherford's convictions were relevant to the question of her credibility. The defendant requested such an

---

[1]The medical examiner testified that he could not determine the time of death because, although rigor mortis generally begins about six to twelve hours after death and dissipates in about twenty-four hours, the intensity of the beating could have brought it on much sooner, and the cold temperatures could have prolonged rigor mortis. Evidence as to the time of death was central to the defendant's claim of alibi: that he was in jail on outstanding warrants at the time of the killing.

instruction and he timely objected to the failure to so instruct. We review under the prejudicial error standard. It was not error for the judge to fail to instruct the jury that they could consider Weatherford's convictions on the question of her credibility. The jury would have understood this through the application of common sense and experience. Cf. *Commonwealth* v. *Beal*, 314 Mass. 210, 232 (1943).[2] The jury were not prevented from considering Weatherford's convictions on the question of her credibility, and defense counsel argued the point in his closing. There was no harm whatsoever to the defendant, much less a substantial likelihood of a miscarriage of justice.

3. *Instruction on credibility of witnesses*. The defendant contends that the judge's general instruction concerning the credibility of witnesses was erroneous in several respects. He first claims that it was biased in favor of the prosecution, and that it included the judge's personal opinions about the characteristics of a truthful witness that amounted to expert opinion testimony. We disagree.

The judge's general instruction on credibility of witnesses was one that is commonly used. It is almost verbatim Instruction 2.07 (Credibility of Witnesses), and Supplemental Instructions 2, 3, and 4 of the Model Jury Instructions for Use in the District Court (Mass. Continuing Legal Educ. 1995). The portions that the defendant argues were improper, based on supplemental instructions 2[3] and 4,[4] are set forth in the margin.

---

[2]It was error for the judge to fail to *limit* the jury's consideration of Weatherford's convictions to the question of her credibility. See G. L. c. 233, § 21; *Commonwealth* v. *Leno*, 374 Mass. 716, 718-719 (1978). A limiting instruction should have been given immediately after Weatherford was impeached by her prior convictions. *Id.* at 718. The purpose of such a limiting instruction is to prevent the use of the convictions for substantive purposes. The absence of such a limiting instruction, designed to prevent the jury from improperly considering Weatherford's prior convictions for purposes other than impeachment, could only inure to the benefit of the defendant. Because the convictions had been admitted without limitation, they could be considered for all purposes.

[3]"You may also consider the witness's motive for testifying, whether the witness displays any bias in doing so and whether a witness has any interest in the outcome of the case. Now, simply because a witness has an interest in the outcome of the case does not mean that the witness is not trying to tell you the truth as the witness recalls it or believes it to be, but a witness's interest in the case is a factor that you may consider along with everything else."

[4]"In deciding whether or not to believe a witness, keep in mind that people

In the absence of an objection to the instruction, we review to determine whether any error created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Garcia*, 379 Mass. 422, 439 (1980). When reviewing a claim of error in the charge, we do not consider fragments of instructions out of context. See *Commonwealth* v. *Aronson*, 330 Mass. 453, 457 (1953). Rather, we "view the charge in its entirety since the adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980).

A judge may describe various factors commonly used to make credibility determinations, see *Commonwealth* v. *Sineiro*, 432 Mass. 735, 742 n.6 (2000); *Commonwealth* v. *Raymond*, 424 Mass. 382, 392 (1997), provided "he specifically informs the jurors that they are the ultimate arbiters of credibility, and that it is for them to decide whether, and to what extent, [something] may affect credibility." *Commonwealth* v. *Bumpus*, 362 Mass. 672, 683 (1972), vacated on other grounds, 411 U.S. 945 (1973), aff'd on rehearing, 365 Mass. 66 (1974). Such an instruction was given. The factors that the judge described were not skewed toward either party, but were neutral.

The judge did not express an "expert opinion" about memory, as the defendant claims. The import of his instruction was that there are no simple rules or formulae for evaluating credibility. He instructed the jury to "look at all of the evidence, drawing on [their] own common sense and life experience." The judge also told the jury that he had "no opinion about the facts of this case or what [their] verdict should be"; that they should not interpret anything he said or did during the trial, including his instructions, as indicating that he had such an opinion; that they alone were the fact finders; and that it would be "improper for [him] to attempt to interfere with or influence [their] fact-finding

sometimes forget things or get confused or remember an event differently. Memory is not always reliable and when someone recounts a story twice it will seldom be identical in every detail unless it is a memorized lie or the witness is possessed of extraordinary perception and recall.

"It is for you to decide whether any contradictions in a witness's testimony are innocent lapses of memory or intentional falsehoods. That may depend upon whether important facts or small details are at issue and how important the facts might have appeared to the witness at the time they were perceived."

function."[5] In the context of the entire charge the jury could not have understood that the judge was giving expert opinion testimony or imposing his judgment on them. There was no error.

The defendant next argues that a portion of the general instruction on credibility impermissibly shifted the burden of proof. In the contested instruction, the judge stated:

> "You may believe everything a witness says or only part of it or none of it. If you do not believe a witness's testimony that something happened, that, of course, is not evidence that it did not happen. It simply means that you must put aside that testimony and look elsewhere for credible evidence before deciding where the truth lies."[6]

The defendant contends that, if the jury disbelieved Weatherford's testimony that he killed Shaw, then this instruction prevented them from finding that he did not kill Shaw, and therefore impermissibly burdened him to provide credible evidence of his innocence.

The defendant takes the instruction out of context. The judge instructed the jury that the Commonwealth had the burden to prove guilt beyond a reasonable doubt, and he reminded them of this burden no less than forty-seven times. The judge told the jury that, if the Commonwealth failed to meet its burden, then they "*must* return a verdict of not guilty" (emphasis added). The judge also told the jury twice that the defendant was not required to prove his innocence. When viewed in the context of the entire charge, the jury would have understood that if they disbelieved Weatherford then the Commonwealth failed to meet its burden and the defendant would be entitled to a verdict of not guilty. It is not likely that the jury would have understood the contested instruction — which pertained to all witnesses, not merely to Weatherford — to require them to look to the defendant to prove his innocence if they disbelieved Weatherford. There was no error in the instruction.

---

[5]This instruction tracked Instruction 2.02 (Function of the Jury) of the Model Jury Instructions for Use in the District Court (Mass. Continuing Legal Educ. 1995).

[6]This instruction was a correct statement of the law. See *Commonwealth* v. *Swartz*, 343 Mass. 709, 712 (1962).

4. *Instruction on guilt of others.* The defendant argues that the judge removed the central issue in the case, Weatherford's credibility, from the jury's consideration when he gave the following instruction:

> "You may not draw any inference favorable or unfavorable to the Commonwealth or the defendant from the fact that any other person was not named as a defendant or is not on trial before you. The question of possible guilt of others should not enter your thinking. Your task is solely to determine whether the Commonwealth has proved beyond a reasonable doubt that this defendant who stands before you committed the crimes that he is charged with."

The defendant had requested a similar instruction, and he did not object to the instruction as given. We review to determine if any error created a substantial likelihood of a miscarriage of justice.

The defendant's argument takes the second sentence of this instruction out of context. Because the defendant had not been tried under a joint venture theory, the judge correctly instructed the jury, as requested, that the only person whose guilt or innocence was to be determined was that of the defendant. Cf. *Commonwealth* v. *Richards*, 363 Mass. 299, 306 (1973); *Commonwealth* v. *Fancy*, 349 Mass. 196, 200 (1965).

Contrary to the defendant's claim, the questioned instruction did not preclude the jury from considering whether Weatherford's involvement in the crime gave her a motive to lie. Her lack of involvement in the killing was a condition of the non-prosecution agreement. Earlier in his charge the judge specifically instructed the jury to examine Weatherford's credibility "with particular care." He told them that they were to consider her nonprosecution agreement with the prosecution "and any hope that [she] might have as to future advantages from the prosecution in evaluating [her] credibility." He also pointedly instructed the jury that "the government does not know whether [Weatherford] is telling the truth." In this regard, the judge appropriately instructed the jury conformably with our decision in *Commonwealth* v. *Ciampa*, 406 Mass. 257, 266 (1989), a case pertaining to testimony given pursuant to a plea agreement, but equally applicable to informal nonprosecution agreements.

Where the judge focused the jury's attention on special problems surrounding Weatherford's credibility, and where defense counsel and the prosecutor also focused on Weatherford's credibility in their closings, the instruction at issue would not have caused the jury to think that the issue of Weatherford's motives and bias had been withdrawn from their consideration. See *Commonwealth* v. *Allen,* 379 Mass. 564, 584-585 (1980) (instruction that jury not consider wisdom of Commonwealth's decision to plea bargain with accomplice could not have confused jury about their duty to evaluate credibility of accomplice's testimony). There was no error.

5. *Instruction on reasonable doubt.* The defendant requested the judge to instruct the jury on reasonable doubt, using the familiar language from *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850), supplemented with the sentence: "In essence you need to reach a subjective state of near certitude of the guilt of the accused." The requested supplemental sentence is merely descriptive of the phrase "an abiding conviction," which was included in the judge's instruction. See *Commonwealth* v. *Pinckney,* 419 Mass. 341, 344 n.3 (1995). We have consistently held that the *Webster* charge as a whole adequately defines reasonable doubt. See *Commonwealth* v. *Ortiz,* 435 Mass. 569, 579 (2002). The requested additional language was not required, and the judge's refusal to incorporate it was not error.

The defendant also objected to the "moral certainty" language in the *Webster* charge. We note that the defendant had requested that the jury be instructed with precisely the same "moral certainty" language the judge actually used. Nevertheless, there was no error. See *Commonwealth* v. *Ortiz, supra.*

There is no merit to the defendant's claim that the jury found the *Webster* charge confusing, when, on the second day of deliberations, they requested to "have a definition of 'reasonable doubt.' " The record does not indicate that they were confused, and they did not request any further instructions on reasonable doubt. It is not uncommon for jurors to request reinstruction, not because they are confused, but because they are proceeding conscientiously with deliberations and want to be reminded of an instruction.

6. *Failure to give certain instructions.* The defendant asserts

error in the judge's failure to instruct on (a) the failure of the Commonwealth to conduct scientific tests, (b) missing witnesses, and (c) alibi. The claims are preserved for our review by the defendant's requests for instructions and the judge's specific precharge refusal to give the requested instructions. See *Commonwealth* v. *Biancardi*, 421 Mass. 251, 253-254 (1995).

(a) *Failure to conduct tests.* There is no merit to the claim that the judge erred by failing to instruct the jury that they were permitted to draw an inference against the Commonwealth from its failure to conduct certain tests or follow certain procedures. See *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980). In the *Bowden* case, we held that a judge may not remove the issue of the Commonwealth's failure to follow particular procedures from the jury's consideration. *Id.* at 486. However, we have repeatedly held that a judge is not required to instruct a jury on claimed inadequacies in the investigation. See, e.g., *Commonwealth* v. *Lapage*, 435 Mass. 480, 488 (2001); *Commonwealth* v. *Cordle*, 412 Mass. 172, 177 (1992). The defendant was, of course, free to argue the point in his closing, which he did. There was no error.

(b) *Missing witnesses.* The defendant contends that he was entitled to a missing witness instruction, see *Commonwealth* v. *Figueroa*, 413 Mass. 193, 199 (1992), *S.C.*, 422 Mass. 72 (1996), as to witnesses the Commonwealth reasonably would be expected to call, but did not. The defendant argues that the witnesses in question could have rehabilitated Weatherford, whose testimony the defendant had suggested was a recent contrivance, by corroborating portions of her testimony through evidence of her prior consistent statements. See *Commonwealth* v. *Zukoski*, 370 Mass. 23, 26-27 (1976); *Commonwealth* v. *Worcester*, 44 Mass. App. Ct. 258, 260-261 (1998) (prior consistent statement admissible to rebut claim that witness's in-court testimony was product of particular inducements or bias or was recent contrivance). There was no error.

"Where a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, the party would naturally offer that person as a witness. If, then, without

explanation, he does not do so, the jury may, if they think reasonable in the circumstances, infer that that person, had he been called, would have given testimony unfavorable to the party. There is no basis for any such inference when it appears that the testimony would be unimportant — merely *corroborative* of, or merely cumulative upon, the testimony of one or more witnesses who have been called" (emphasis added). *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134 (1986). Where the witnesses would have given testimony of limited value, namely, repeating Weatherford's prior consistent statements that were merely *corroborative* of her testimony, a missing witness instruction was not warranted. *Id.*

(c) *Alibi.* There is no merit to the defendant's claim that he was entitled to an alibi instruction. An alibi instruction is not required where the charge as a whole makes clear that the Commonwealth must prove beyond a reasonable doubt that the defendant committed the crime for which he was indicted. See *Commonwealth* v. *Medina*, 380 Mass. 565, 579 (1980), *S.C.*, 430 Mass. 800 (2000). The defendant does not argue that the judge failed to state clearly that the Commonwealth had the burden to prove that he was the perpetrator, and we are satisfied that the charge made this clear.

7. *Uncorroborated testimony of immunized witness.* The defendant argues that he was entitled to have the jury instructed that they could not return a verdict of guilty based on the uncorroborated testimony of a witness whose testimony was given pursuant to an informal nonprosecution agreement. The defendant requested such an instruction but the judge made no precharge ruling denying the requested instruction that would have preserved the issue for appellate review. See *Commonwealth* v. *Biancardi*, *supra* at 253-254. The defendant did not preserve the issue by a postcharge objection to the judge's failure to give the requested instruction. See *Commonwealth* v. *Chapman*, 433 Mass. 481, 489 (2001). We review pursuant to G. L. c. 278, § 33E, to determine if any error created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Evans*, 438 Mass. 142, 157 (2002), cert. denied, 538 U.S. 966 (2003).

There is no requirement of corroboration in this case. Weath-

erford had not been granted immunity pursuant to G. L. c. 233, § 20E. Therefore, the requirement of corroboration under § 20I does not apply. See *Commonwealth* v. *Knowlton*, 50 Mass. App. Ct. 266, 270 (2000). There is no constitutional requirement that the testimony of an immunized witness be corroborated, regardless of how the witness was immunized. See *Commonwealth* v. *Watkins*, 377 Mass. 385, 389-390, cert. denied, 442 U.S. 932 (1979) (no right to corroboration of testimony of accomplice), citing *Caminetti* v. *United States*, 242 U.S. 470, 495 (1917).[7]

We decline the defendant's invitation to require, as a matter of common law or constitutional law, that the testimony of an informally immunized witness must be corroborated before a defendant may be convicted. We have encouraged judges to instruct juries to scrutinize the testimony of accomplices with great care, regardless of the presence of corroborative evidence. See *Commonwealth* v. *Andrews*, 403 Mass. 441, 458 (1988), citing *Commonwealth* v. *French*, 357 Mass. 356, 395-396 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts*, 408 U.S. 936 (1972). The judge not only gave such an instruction in this case, but he also told the jury, following *Commonwealth* v. *Ciampa*, 406 Mass. 257, 266 (1989), that under its nonprosecution agreement the Commonwealth had no means of knowing if Weatherford were testifying truthfully. The judge's instruction adequately protected the defendant's rights.

Moreover, a witness who testifies is subjected to one of the most rigorous tests of scrutiny: cross-examination, which "is beyond any doubt the greatest legal engine ever invented for the discovery of truth." *Commonwealth* v. *O'Brien*, 419 Mass. 470, 484 (1995) (O'Connor, J., dissenting), quoting 5 J. Wigmore,

---

[7]Nevertheless, there was ample evidence that corroborated Weatherford's testimony: the nature of the victim's injuries, the discovery of fibers and debris at the Roxbury apartment and in the cellar that were consistent with fibers and debris found on Shaw's body, the defendant's admission to police that he telephoned the police station to determine if the detective who was trying to meet with Weatherford worked in the homicide unit, and evidence of the defendant's consciousness of guilt (his false statement to police that he never lived at the Roxbury apartment and his efforts to hide from police when they sought to arrest him). General Laws c. 233, § 20I, requires corroboration only of one element of the crime charged, see *Commonwealth* v. *Fernandes*, 425 Mass. 357, 359-360 (1997). Here, the evidence corroborated more than one element of the crime testified to by Weatherford.

Evidence § 1367 (Chadbourn rev. ed. 1976). The defendant fully exposed through cross-examination any motive Weatherford may have had to testify favorably for the Commonwealth, and he also impeached her credibility by other means (prior convictions and prior inconsistent statements). The judge's instruction that Weatherford's testimony be examined "with particular care" and the defendant's thorough and forceful cross-examination of her protected the defendant's right to a fair trial. See *Commonwealth* v. *Allen*, 379 Mass. 564, 584-585 (1980).

8. *Relief under G. L. c. 278, § 33E.* We have reviewed the transcripts, the entire record, and the briefs, and we see no reason to exercise our power under G. L. c. 278, § 33E, to reduce the conviction or grant a new trial.

*Judgment affirmed.*